# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### APRIL SESSION, 1998

FILED

June 10, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9701-CR-00021** |
| | ) | |
| Appellee, | ) | |
| | ) | **DAVIDSON COUNTY** |
| **V.** | ) | |
| | ) | |
| | ) | **HON. ANN LACY JOHNS, JUDGE** |
| **MICHAEL DOUGLAS HUGHES,** | ) | |
| | ) | |
| Appellant. | ) | **(AGGRAVATED RAPE)** |

<u>FOR THE APPELLANT:</u>

**SAM E. WALLACE, JR.**
227 Second Avenue North
Nashville, TN 37201

<u>FOR THE APPELLEE:</u>

**JOHN KNOX WALKUP**
Attorney General & Reporter

**TIMOTHY F. BEHAN**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243

**VICTOR S. JOHNSON, III**
District Attorney General

**LILA STATOM**
Assistant District Attorney General
Washington Square
222 Second Avenue North, Suite 500
Nashville, TN 37201-1649

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Michael Douglas Hughes, appeals as of right from the sentencing order of the Davidson County Criminal Court. The Defendant was indicted on eleven (11) counts of aggravated rape by the unlawful sexual penetration of a child less than thirteen (13) years of age. Defendant pled no contest to one (1) count of aggravated rape and guilty to ten (10) counts of aggravated rape. The trial court sentenced Defendant to twenty (20) years for each count, with the sentences for four (4) of these counts to run consecutively to each other and the remaining counts to be served concurrently to each other. The total effective sentence is eighty (80) years. The Defendant argues the following on appeal:

> 1) Whether the trial court erred in sentencing him to twenty (20) year sentences for each count when the minimum sentence for each count is fifteen (15) years;
>
> 2) Whether the trial court erred in imposing consecutive sentences;
>
> 3) Whether the trial court erred in considering uncharged sexual acts;
>
> 4) Whether the trial court erred in properly explaining the use of enhancement and mitigating factors; and
>
> 5) Whether the indictments in this case failed to set forth the *mens rea* elements of aggravated rape.

We affirm the judgment of the trial court.

When an accused challenges the length, range or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

There are, however, exceptions to the presumption of correctness. First, the record must demonstrate that the trial court considered the sentencing principles and all relevant facts and circumstances. Id. Second, the presumption does not apply to the legal conclusions reached by the trial court in sentencing. Third, the presumption does not apply when the determinations made by the trial court are predicated upon uncontroverted facts. State v. Smith, 898 S.W.2d 742, 745 (Tenn. 1994), perm. to appeal denied, id. (Tenn. 1995).

At the sentencing hearing, the victim, S.E., (we will refer to the victim of child sexual abuse by initials) testified that she and her mother formerly lived with the Defendant and she called him "Dad." The first time S.E. was touched by the Defendant in a sexual way was when she was four (4) years old and living in North Carolina. On that first occasion, her mother was away from home and the Defendant was sitting in his recliner when he asked S.E. to come and sit in his lap. She complied, then Defendant asked her to "kiss his private part, and then he kissed my private part." Defendant told the victim not to tell her mother, that "it would be our secret." The abuse continued at different times until S.E. was nine (9) years of age. The victim described occasions when the Defendant would "put his private part inside of [her], inside [her] bottom, his finger inside of [her] private part and inside of [her] bottom." The Defendant used cold cream in her bottom when he abused her. S.E. recalled that something "dark and slimy" came out of the Defendant's body during these events.

When asked why she did not tell, S.E. stated that she was afraid and that Defendant said "it was our secret . . . and I considered him my dad, so I said this is what dad said, and I had better listen." The victim told her best friend about these

events, and that led to her mother finding out about the sexual abuse. S.E. went through therapy because of these events, but reported that she was doing fine at the time of her testimony.

Marcia Hughes, S.E.'s mother and the Defendant's ex-wife, first learned of the abuse when a police detective came to her place of employment and told her. She took the victim and left their residence with the Defendant that day. Ms. Hughes stated that she did not have any money and that when she returned to her home several days later, the Defendant had removed all her money and charge cards from her wallet. Defendant also emptied out her bank account. She and S.E. stayed with family members until she got assistance from the Department of Human Services. Ms. Hughes recalled that the victim was in counseling at the Guidance Center in Murfreesboro for five (5) or six (6) months. At first, S.E. appeared relieved that the abuse stopped, but then she was very sorry that she told because everything had been taken away from her. Then, the victim became angry, and Ms. Hughes feared that when S.E. gets older the anger will return. During this time period, Ms. Hughes stated that the Defendant never offered to help them and the only way they were able to return to live in their home was because of a court order.

Jamie Langley is a counselor at the Guidance Center in Murfreesboro, Tennessee. She was involved in S.E.'s treatment which began in November 1991 and continued through March 31, 1992. The victim was placed in a girls' sex abuse treatment group where she expressed feelings of anger, shame and embarrassment about the abuse that occurred. During the sessions, S.E. described nightmares and anxiety, but overall was doing well. Langley believed that S.E. had benefited greatly from the support of her mother and family such that she was better equipped to deal

with the trauma.  The victim asked to discontinue therapy in March, and Langley stated that this is a common practice as children want to forget the events which cause them pain.  In May, S.E.'s mother called to place her back into therapy, but they subsequently had to move and Langley had not seen the victim since March. Langley thought that S.E. would continue to have problems regarding the abuse and possibly suffer from a mental health disorder later in life.

Dr. John Holloran testified for the defense.  He is the Director at New Life Lodge, a treatment center for drug and alcohol addiction.  The Defendant was one of his patients, and when he began treatment Defendant was in the "crucial stage" of alcoholism.  Defendant abused alcohol for twenty-five (25) years, daily consuming between twelve (12) to twenty-four (24) beers and half a liter of scotch.  Dr. Holloran reported that Defendant made every effort to deal with his disease and was an excellent patient.

Don Roy served as Defendant's sponsor in Alcoholics Anonymous.  Roy stated that Defendant had terrible remorse and guilt regarding his abuse of S.E. Defendant never denied the charges against him.

Ron Hutcheson was Defendant's co-sponsor in Alcoholics Anonymous and stated that Defendant expressed remorse for his actions.  Defendant never denied that the events occurred and was willing to face trial.

Robert Vero, the Executive Director of Luton Mental Health Services in Nashville, evaluated Defendant as an adult sexual offender.  He evaluated Defendant on two occasions to determine his sexual predisposition toward violence,

age and gender. Vero wanted to make a determination as to his overall risk to the community as a known sex offender. Defendant's physiological exam was broken into two parts during which he was exposed to nudity slides of individuals of both genders ranging from two (2) years of age through adulthood then exposure to a tape of pedophilia to determine whether or not Defendant has a proclivity toward violence or non-violence. Defendant showed sexual arousal during audio stimulation of an adult with a consenting or initiating child, but did not show any arousal to forced sexual activity or violence with children. In determining whether Defendant is a violent threat to the community, Vero determined that Defendant used moderate coercion practices to commit acts of sexual abuse.

Defendant perceives the world through very distorted thinking, making "meaning of the world in the way that he needs the world to be." Defendant "tends to make meaning of relationships in the way that he needs to see relationships." When asked why Defendant sought gratification through S.E., Defendant stated that he "felt [she] did not love me as much as her own dad. I love her so much. I don't want to make this sound like an excuse, but . . . it's going to make this child love me." Vero described this statement as a classic example of distortion.

The role alcohol played in the Defendant's sexually abusive behavior was as a disinhibitor, therefore it would not be sufficient to remove alcohol from Defendant's life in order to prevent further episodes of sexual abuse. The alcohol allowed Defendant to dull his inhibitions, allowing him to penetrate the victim. As a result of his evaluation, Vero recommended treatment for Defendant's sexually offensive behavior and some term of incarceration. Defendant has a "good chance at learning how to control his sexually abnormal behavior . . . but no chance of curing his

sexually abnormal behavior." Defendant would need lifelong treatment, and would still require good surveillance mechanisms for monitoring his behavior in order to be a minimal risk to the community.

Defendant admitted to digital finger penetration of the victim's vagina, oral sex, both cunnilingus and fellatio, and penile penetration of her labia. Defendant had no recollection of anal intercourse. Defendant adamantly denied ejaculating in the presence of or inside of the victim.

The Defendant testified that he was a recovering alcoholic. He knew that he had done something terribly wrong, but could not recollect exactly what it was that he had done. Defendant thought that he had blacked out through most of the sexual abuse. When he found out from Detective Ronald Carter that he was charged with eleven (11) counts of rape, he was scared and did not know that he had penetrated S.E. Over a period of time, he recalled all that went on, but it is still "very cloudy." Defendant admitted that the victim is a very truthful person and is a good, respectable little girl who would not lie. Defendant believed that most of his crimes were alcohol related and that he would never drink again.

Defendant felt that he was capable of rehabilitation and could be a productive member of society, but needed continued alcohol and sexual treatment. He was willing to do whatever he could personally do to help the victim.

On cross-examination, Defendant recalled that the first instance of abuse occurred when the victim was four (4) years old. Defendant claimed that S.E. crawled up in his lap where he was sitting with his pants unzipped. S.E. was very

curious about what a male looked like, and he eventually molested her after the victim initiated the touching and wanted to "find out what it was all about." On a later occasion, S.E. came into the Defendant's bedroom while the Defendant was lying in bed and asked him to do all the things to her that he and her mother did. Defendant did admit to doing sexual things to the victim without her asking for those things to occur, but he could not recall any of these occasions. He recalled that S.E. often came into his room without wearing any clothes. When asked if the victim initiated the contact, Defendant stated that "she was in our bed a lot." Defendant did not admit guilt initially due to his fear and concern for the victim; he knew he had done something but did not know exactly what it was.

The trial court sentenced Defendant on each of these eleven (11) counts to serve a term of twenty (20) years in the Department of Correction. Four (4) of these sentences were to be served consecutively to each other, with the rest to run concurrently. The total sentence was eighty (80) years. The trial court stated that it would reduce to writing the checklist of enhancing factors that it relied upon. The fact that Defendant had acknowledged misconduct and started the process of correcting his misconduct was taken into account. Consequently, the trial court found that there were significant limitations regarding the mitigation. Regarding his credibility, Defendant's memory was remarkably vivid when putting the blame on the victim as he could remember in minute details her "various seductive activities." When asked to recall his own conduct, he conveniently blacked out. The trial court found this lack of credibility as impacting on the success of treatment, the need for punishment and the need to protect society.

While the trial court recognized the Defendant's problem with alcohol, it could not overlook the fact that if the victim had not reported the abuse then the abuse would have continued. Only when Defendant was forced to protect himself from these accusations did he determine that he needed treatment. The trial court further noted that there is an enormous need for deterrence of this type of criminal activity in the court's jurisdiction and would take judicial notice of that fact.

Our review of this sentence is de novo, without a presumption of correctness, because the trial court failed to explicitly set forth the enhancement factors. Tenn. Code Ann. § 40-35-210(f). By failing to state the relevant findings of fact, the trial court did not justify the application of enhancement factors and how it determined the weight to which it applied each of the factors.

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

Aggravated rape is a Class A felony. Tenn. Code Ann. § 39-13-502(b). Having no prior criminal record, Defendant was sentenced as a Range I, Standard Offender, subject to a sentence of not less than fifteen (15) nor more than twenty-five (25) years. Tenn. Code Ann. § 40-35-112(a)(1). This offense and Defendant's

subsequent sentencing occurred prior to the amendment of Tennessee Code Annotated section 40-35-210(c) which sets the presumptive sentence for a Class A felony at the midpoint of the range. Tenn. Code Ann. § 40-35-210(c)(1997 Repl.). At the time of Defendant's offense and sentencing, the presumptive sentence was the minimum within the range if there were no mitigating or enhancement factors. Tenn. Code Ann. § 40-35-210(c)(1990 Repl)(repealed 1995). If there are enhancement and mitigating factors, then the court must start at the minimum sentence, enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors. Id. at (e).

Defendant argues that his sentence of twenty (20) years for each offense is excessive. While the trial court stated that it would set forth written findings of fact as to the applicable enhancement factors, these findings were not established within the record as required under Tennessee Code Annotated section 40-35-210(f). Under our de novo review, we find the following factors applicable. First, the victim of the offenses was particularly vulnerable because of age. Tenn. Code Ann. § 40-35-114(4). Even though age was an essential element of the crimes for which Defendant was convicted, the victim was particularly vulnerable because of her extremely young age of four (4) years and her vulnerability due to her relationship with her stepfather. See State v. McKnight, 900 S.W.2d 36, 54 (Tenn. Crim. App. 1994). Also, the offenses involved a victim and were committed to gratify the Defendant's desire for pleasure or excitement. Tenn. Code Ann. § 40-35-114(7). Testimony was given describing Defendant's ejaculation during these episodes of abuse and that Defendant was evaluated and determined to have sexual arousal and pleasure from consensual sexual activities with young female children. Pleasure

or excitement is not an essential element of the offense of rape and, therefore, may be considered as an appropriate enhancement factor. State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993) (citations omitted). Finally, the Defendant abused a position of private trust when committing these offenses. Tenn. Code Ann. § 40-35-114(15). The victim testified that the Defendant told her this was "our secret" and that she considered him her dad, so she "had better listen." The Defendant's status as stepfather while living with the victim's mother is a sufficient basis for sentence enhancement under factor (15). Adams, 864 S.W.2d at 34.

The only applicable mitigating factor, one which the trial court did mention at the conclusion of the hearing, is the Defendant's remorse for his actions. Tenn. Code Ann. § 40-35-113(13). As the trial court correctly stated, this mitigating factor should not be given much weight as Defendant would still probably be committing these offenses if the victim had not told of the abuse. Furthermore, the Defendant insisted at the sentencing hearing that the victim initiated these sexual offenses. It is evident that Defendant has not yet taken the responsibility for his heinous actions.

Under our de novo review, the sentence of twenty (20) years is appropriate given the application of three (3) enhancement factors. The evidence of Defendant's repeated course of sexual abuse of the victim over a five (5) year period and the resulting emotional injuries fully support this sentence. Defendant urges this court to consider his potential for rehabilitation, but the evaluation of Defendant proved that he might commit sexual offenses at a later date. Defendant's continued blame of the victim for the occurrence of these sexual episodes is evidence of his lack of responsibility for his actions, and this directly bears upon his potential for rehabilitation. Defendant argues that the trial court considered uncharged sexual

-11-

acts when sentencing the Defendant. We can find no evidence of this in the record. The Defendant's sentence of twenty (20) years for each sentence was appropriate, and these issues have no merit.

Defendant also contests the consecutive nature of these sentences. Four (4) of the eleven (11) sentences were ordered to be served consecutively, with the remaining seven (7) to be served concurrently with each other and the other sentences. If a defendant is convicted of more than one (1) criminal offense, the trial court may order his sentences to run consecutively when the offenses involve sexual abuse of a minor with consideration to the aggravating circumstances arising from the relationship between the defendant and the victim, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims. Tenn. Code Ann. § 40-35-115(b)(5). In the case sub judice, the Defendant sexually abused his stepdaughter from the time she was four (4) years of age until she was nine (9). The abuse only ceased at that time because S.E. told her best friend of these offenses. The Defendant employed coercive tactics to keep the victim silent for a period of five (5) years, and during that time committed every type of rape imaginable, including oral, vaginal and anal. S.E. testified that she had to receive counseling, and her counselor suggested that she would continue to need counseling. While S.E. was not currently undergoing therapy, there was sufficient evidence of the victim's anger, shame and embarrassment regarding the abuse to constitute her emotional and mental damage as a result of the Defendant's repeated abuse. In addition, an extended sentence is necessary for the Defendant to protect the public against further criminal conduct and the sentences reasonably relate to the severity of the

offenses Defendant committed. State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995). This issue is without merit.

In his final issue, Defendant argues that the indictments are invalid as they fail to charge the Defendant with the requisite *mens rea* element of "intentionally, knowingly or recklessly" raping the victim in violation of Tennessee Code Annotated section 39-13-502. The substance of each count of the indictment which charges aggravated rape is as follows:

> That Michael Douglas Hughes on a day in 1990 or 1991, in Davidson County, Tennessee and before the finding of this indictment, did engage in unlawful sexual penetration of [S.H.], a child less than thirteen (13) years of age, in violation of Tennessee Code Annotated § 39-13-502, and against the peace and dignity of the State of Tennessee.

Defendant relies upon a decision of this court in State v. Roger Dale Hill, No. 01C01-9508-CC-00267, Wayne County (Tenn. Crim. App., Nashville, June 20, 1996). The Tennessee Supreme Court recently reversed this court's decision in State v. Hill, 954 S.W.2d 725 (Tenn.1997). The indictment in Hill charged the defendant in all counts with the following:

> [The defendant] did unlawfully sexually penetrate [the victim], a person less than thirteen (13) years of age, in violation of Tennessee Code Annotated § 39-13-502, all of which is against the peace and dignity of the State of Tennessee.

The supreme court in Hill held that the required mental state may be inferred from the nature of the criminal conduct alleged in the indictment under review in that case. As the statutory elements of the offenses are identical to that in the indictment in Hill, our supreme court's decision is controlling. The required mental state of intentionally, knowingly or recklessly may be inferred from the nature of the criminal conduct alleged in this indictment. Id. at 729. This issue is without merit.

-13-

We affirm the judgment of the trial court.

-14-

_____
THOMAS T. WOODALL, Judge


CONCUR:



_____
GARY R. WADE, Presiding Judge


_____
L. T. LAFFERTY, Special Judge