# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

Assigned on Briefs September 11, 2012

## STATE OF TENNESSEE v. NGOC DIEN NGUYEN

**Appeal from the Criminal Court for Sumner County**
**No. CR399-2011      Dee David Gay, Judge**

---

**No. M2012-00549-CCA-R3-CD - Filed October 26, 2012**

---

The defendant, Ngoc Dien Nguyen, pled guilty to theft over $1,000 and attempted theft over $1,000 and was sentenced as a Range I offender to an effective term of six years in the Department of Correction. The court ordered that the six-year sentence be served consecutively to a Robertson County sentence and a California sentence and that the defendant pay $9,462 in restitution to the victim. On appeal, the defendant challenges the award of restitution. After review, we affirm the defendant's convictions but remand for a new hearing as to restitution.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded

ALAN E. GLENN, J., delivered the opinion of the Court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

David A. Doyle, District Public Defender (on appeal); and Terry Frizzell, Hendersonville, Tennessee (at trial), for the appellant, Ngoc Dien Nguyen.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Lawrence R. Whitley, District Attorney General; and Tara Wyllie and Thomas B. Dean, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTS

At the November 30, 2011 guilty plea hearing, the State recited the facts it would have presented had the case gone to trial:

[T]he State's proof would show that on the Attempted Theft over $1,000 there

was a check passed at Sumner Bank & Trust of Hendersonville for the amount of $4,722 by the defendant, Ngoc Nguyen. That check was written, . . ., on or about . . . February 14, 2011. He did not have the owner's consent and he did deprive them of that amount of money – or attempted to on that case.

On Count Two, . . ., the State's proof would show that on February 15, 2011, the defendant cashed a countercheck in the amount of $4,700 at the American Security Bank & Trust on Springhouse Court in Hendersonville, Tennessee. That he did that and took the value of $4,700 without the bank's . . . effective consent and to deprive them of that amount[.]

At the February 6, 2012 sentencing hearing, Christy Caudill, the chief information officer for American Security Bank in Hendersonville, testified that the defendant came into the bank on February 14, 2011, and deposited Check No. 1037 in the amount of $4,722 drawn from his account at Sumner Bank & Trust. That same day, he wrote Check No. 1194 in the amount of $4,722 from his account at American Security Bank and deposited it at another bank. The next day, the defendant returned to American Security Bank and cashed an over-the-counter check in the amount of $4,700, which the bank paid because there appeared to be sufficient funds in his account. However, Check No. 1037 was subsequently returned to American Security Bank for insufficient funds. The defendant also wrote two additional checks, each in the amount of $4,722, from his account at American Security Bank. Caudill said that Check No. 1194 "was paid, but it was not a good check" and that the other two checks were returned for insufficient funds to the bank of first deposit. She said that American Security Bank's loss totaled $9,462. Caudill said that the defendant's activity was known as "check-kiting," meaning that he used "the float time between the time a check is deposited and it comes back as insufficient to the bank. He[] us[ed] that little bit of time in between to try to withdraw those funds."

Connie Newby, an employee of Sumner Bank & Trust, testified that she had worked in banking for forty years and was familiar with check-kiting. She said the defendant opened an account at Sumner Bank & Trust on February 24, 2010, but did not use it again until February 14, 2011, when he deposited a check in the amount of $4,722 drawn on American Security Bank. Prior to that deposit, the defendant's account had had a balance of $125 for "a long period of time." The check the defendant wrote to American Security Bank on February 14, 2011, as well as another check he wrote to Old Hickory Credit Union, were returned, the first one for insufficient funds and the second one as "closed." Newby explained that there was one check coming in and two checks going out from the defendant's account and that between the three banks, "there was a float of $14,166," meaning that the checks had been deposited but had not had time to clear the bank.

Kimberly Gulden of the Tennessee Board of Probation and Parole testified that she prepared the defendant's presentence report, which was made an exhibit. She said the defendant had two felony convictions from Robertson County and was on probation when he committed the present offenses. Her investigation revealed that the defendant had an outstanding warrant in Washington for unlawful issuance of bank checks and second degree theft. He also had a parole violation in California stemming from his convictions for grand theft over $400 and a fraudulent claim for loss. The defendant reported that his wife lived in California and that he visited there often. The defendant further reported that he had a gambling addiction and alcohol problem and that he spent all of the $4,700 in one day in Tunica, Mississippi.

According to Gulden's presentence report, the defendant disputed the amount of restitution he owed, which was to be resolved at the sentencing hearing. The United States Department of Immigration had placed a hold on the defendant because he was not a legal citizen and was in this country with a "green card."

The forty-year-old defendant testified that he was born in Vietnam and came to the United States when he was thirteen years old and lived with his uncle in California until he was eighteen. He began gambling in high school and, in college, started going to casinos three to four times a week. He gambled with the money he earned from his electronic manufacturing job, as well as the financial aid money he had received to attend college. He moved to Washington state after attending two years of college in California and graduated from the University of Washington with a degree in engineering. He worked at Seaman's Medical System in Washington from 1994 to 1996 when he was laid off "because of [his] gambling." He then worked for various temporary agencies but continued to gamble. In 1998, he sponsored his parents to come from Vietnam to America and moved back to California. At the time, he was living "under US Green Card Legal Alien" but never applied for citizenship because he "caught the DUI [i]n '93 and then from that day, . . . [he had] to go and expunge that . . . . I feel like I don't really need it until '98 I caught that felony." He admitted that he had been arrested for a felony bad check charge in California in 1998.

The defendant said he married in 1998 or 1999 and that his gambling caused his separation from his wife and children, as well as problems with his employment. He admitted that he was addicted to gambling and that it controlled his life, but he had never sought treatment for it. In 2009, he moved from California to Tennessee to work in his cousin's nail salon in Nashville. He also worked as a handyman for Lien Vo at Platinum Realty. While living in Tennessee, he gambled online and frequented casinos in Mississippi, Illinois, and Indiana.

Asked if he had the money to pay the restitution, the defendant said he had talked to his mother and his family did not "have the money that $9,000 to pay the restitution. . . . I

asked [the trial judge] last November 30 I come up with that $5,000 . . . because that's what he put me for the [s]entencing [h]earing to determine how much money I owe." He said that the restitution would have to be paid by his family because he had no money. The defendant said that the "only amount [he] would admit [was] $4,700 instead of $9,444," although his bank statement showed a negative balance of $9,444. According to the defendant, the only money he took was the $4,700 from the countercheck he cashed at American Security Bank.

The defendant admitted that he had an extensive criminal history and that he was on parole from California for his convictions for DUI, third offense, felony evading an officer, and felony forged check when he committed the present offenses. He also admitted that he had been convicted of two counts of passing a worthless check over $1,000 in Robertson County, Tennessee, and sentenced to concurrent terms of two years which began on April 30, 2010, but denied that he was on probation when he committed the present offenses. He said that his parents paid the restitution to the bank in the Robertson County case and that his family had paid about $14,000 over the years as a result of his crimes.

At the conclusion of the hearing, the trial court applied two enhancement factors, the defendant had a previous history of criminal convictions or criminal behavior and the defendant was on parole in California and probation in Robertson County when he committed the present offenses, see Tenn. Code Ann. § 40-35-114(1), (13), and sentenced the defendant to four years for the theft conviction and two years for the attempted theft conviction. Finding that the defendant had an extensive criminal history and that he was on parole and probation when he committed the present offenses, the court ordered the sentences to be served consecutively to each other and to his sentences in California and Robertson County. Additionally, the court recommended that the defendant serve his entire sentence without parole because of his extensive criminal history and the court's finding that he was a danger to the public.

## ANALYSIS

The defendant argues that, in ordering him to pay $9,462 in restitution to American Security Bank & Trust, the trial court did not consider his financial resources and future ability to pay, did not specify the amount of time and payment, and did not state that he would be required to pay restitution although the judgments include that requirement. He asks this court to amend the judgments by omitting the reference to restitution and by deleting the trial court's recommendation to the Board of Probation and Parole. The State responds that the defendant has "misstate[d] the facts" and that the trial court determined the amount of restitution at the sentencing hearing. In his reply brief, the defendant argues that it is the State who has misstated the facts because "the very words of the trial court fail to include any directive that the [defendant] make restitution."

-4-

Tennessee Code Annotated section 40-20-116(a) provides that a trial court order restitution "[w]henever a felon is convicted of stealing or feloniously taking or receiving property, or defrauding another of property." In <u>State v. Bottoms</u>, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001), this court explained the considerations of the trial court in ordering payment of restitution:

> In determining the amount and method of payment of restitution, the trial court must consider "the financial resources and future ability of the defendant to pay or perform." Tenn. Code Ann. § 40-35-304(d); <u>see also</u> <u>State v. Johnson</u>, 968 S.W.2d 883, 886 (Tenn. Crim. App. 1997) ("[T]he trial court, in determining restitution, must also consider what the appellant can reasonably pay. An order of restitution which obviously cannot be fulfilled serves no purpose for the appellant or the victim."); <u>State v. Smith</u>, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994) ("The trial court must further set an amount of restitution that the appellant can reasonably pay within the time that he will be within the jurisdiction of the trial court.").

At the guilty plea hearing, the trial court informed the defendant that the amount of restitution he owed would be determined at the sentencing hearing, and the defendant said he understood. At the sentencing hearing, the following exchange occurred between the trial court, the prosecutor, and Christy Caudill of American Security Bank & Trust:

THE COURT: Is the restitution figure $9,462, wasn't that the testimony of Ms. Caudill?

[THE STATE]: Judge, I think that's right. I didn't have the exact figure written down.

THE COURT: I think that's what she testified to.

MS. CAUDILL: Yes, that's correct.

We have reviewed the record on appeal, and it is clear that, in sentencing the defendant, the trial court considered the purposes and principles of our sentencing act in setting the defendant's sentence. Accordingly, we review the sentence using an abuse of discretion standard.

The defendant argues that, in setting the amount of restitution for him to pay to the victim, the court did not consider his financial resources or ability to pay. At the sentencing hearing, the defendant testified that he had been in jail for ten months, unable to post a $25,000 bond. According to his presentence report, he was on probation in Robertson

County and on parole in California, and "holds" had been placed on him by the State of California and the United States Department of Immigration, presumably because he was not a citizen of the United States and had numerous felony arrests and convictions. Thus, given the defendant's lack of job skills and funds, felony convictions, continuing incarceration following his completion of the Sumner County convictions, and prospect of being deported back to Vietnam upon finally completing his various terms of incarceration, it would appear very unlikely that he will be able to pay any restitution. However, our procedure requires, as we have set out, that a trial court, in setting restitution, must consider the defendant's financial resources and ability to pay or perform within the time that he will be within the court's jurisdiction. Since it does not appear that these matters were fully considered by the trial court, we remand the matter for these determinations to be made.

The defendant also points out that because his sentence was to be served in the Department of Correction, the trial court no longer had jurisdiction over the manner of service of his sentence, see Tenn. Code Ann. § 40-35-212(c), and therefore could not make a recommendation to the Board of Probation and Parole.

The sequence in this case, as we have set out, is that the defendant entered pleas of guilty on November 30, 2011, and the court, at that time, advised him that a determination as to payment of restitution and, if so, in what amount, was to be reserved until the sentencing hearing. That hearing was held on February 6, 2012, when the defendant was ordered to pay restitution in the amount of $9,462. He argues on appeal, as we understand, that since his pleas of guilty to felony convictions were entered on November 30, 2011, at which time the court said that the issue of restitution would be addressed at the sentencing hearing, the court could impose the making of restitution and the conditions only at the submission hearing but not at the sentencing hearing. We agree with the defendant that Tennessee Code Annotated section 40-35-212 provides that a trial court loses jurisdiction once a defendant has been sent to the state penitentiary. However, we disagree with his view of the effect of this statute on a court's imposing restitution and note that he cites no authorities in this regard. Accordingly, we conclude that this claim is without merit.

## CONCLUSION

Based on the foregoing authorities and reasoning, the defendant's convictions are affirmed, but the matter is remanded for a new hearing as to restitution.

_____
ALAN E. GLENN, JUDGE