IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 10, 2009

## STATE OF TENNESSEE v. J. STEVEN BRASFIELD

**Direct Appeal from the Circuit Court for Haywood County**
**No. 6115    Clayburn Peeples, Judge**

---

**No. W2009-00026-CCA-R3-CD  - Filed February 25, 2010**

---

The Defendant, J. Steven Brasfield, pled guilty to three counts of violating trapping regulations.  The trial court sentenced the Defendant to serve thirty days of probation and ordered him to pay $5500 in restitution.  On appeal, the Defendant contends that restitution is not proper in this case and that the trial court erred when it set the amount of restitution.  After a thorough review of the evidence and the applicable authorities, we reverse and remand the case for the trial court, in determining the appropriate restitution in this case, to consider the Defendant's financial resources and ability to pay.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

J. Diane Blount (at trial and on appeal), Trenton, Tennessee, and Tom W. Crider (on appeal), Trenton, Tennessee, for the Appellant, J. Steven Brasfield.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Sophia S. Lee, Assistant Attorney General; Garry G. Brown, District Attorney General; Hal Dorsey, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I. Facts

This case arises from the accidental death of a trained bird dog that wandered into a steel trap the Defendant set in violation of Tennessee trapping regulations.  The Defendant

pled guilty to violating the trapping regulations in the following three ways: setting a trap without the property owner's written consent; setting a trap without stamping it with the trapper's name; and recklessly setting a trap for a period exceeding thirty-six hours. The trial court held a sentencing hearing, wherein the following evidence was heard: Travis Baggett, the owner of the dog killed in the trap, testified that he bought the dog, a yellow Labrador Retriever named Gage, for $2500 one year before the dog was killed. He explained he bought Gage from someone who had already spent $6000 training Gage to be a "retrieving duck dog." After Gage died, Baggett purchased a dog to replace Gage, and he sent it to a trainer for six to eight months at the rate of $500 per month.

Baggett owned, trained, and sold between fifteen and twenty bird dogs over the course of several years. He explained that a dog's value is based in part on its breed and bloodline and that Gage's breed and bloodline were particularly good. Additionally, Gage's training and retrieving ability were extraordinary. Baggett testified that, given Gage's breeding and retrieving skill, he would sell for between $5000 and $8000, depending on fluctuations in the market and economy.

The Defendant testified that, although he had no written consent to set the trap in this case, he had hunted on this property for fifteen years with the property owner's permission. He explained that he was unable to check the traps within thirty-six hours of setting them because he had to transport his wheelchair-bound wife to and from doctor appointments.

The Defendant has been disabled and relying upon Social Security Disability income since 1986. He explained he was trapping to supplement this income and to pay his medical bills, which totaled over one million dollars. He testified that, shortly after being charged in this case, he developed pneumonia, which resulted in a six-month hospitalization, including a sixty-day stay in the intensive care unit.

At the conclusion of the hearing, the trial court sentenced the Defendant to serve thirty days of probation and ordered him to pay $5500 in restitution. It is from this judgment that the Defendant now appeals.

## II. Analysis

The Defendant first contends the trial court erred in finding that restitution was appropriate in this case. He argues that restitution was inappropriate because Gage's death was not the direct result of his non-compliance with trapping regulations and because his clean criminal record and the minor nature of his crime indicate that restitution "goes beyond the function" of punishing the Defendant.

2

The Defendant also contends that, assuming restitution is appropriate, the trial court erred when it set the amount of restitution. He argues that the record does not contain evidence that the victim suffered a pecuniary loss in the amount of the restitution set by the trial court, and that the amount set does not reflect a consideration of his ability to pay the restitution.

The State responds that restitution is appropriate in this case because the purpose of restitution is "not only to compensate the victim but also to punish and rehabilitate the guilty," and, as such, a defendant need not have "caused" a victim's loss in order to be responsible for it through an order of restitution. The State further argues that, even if an imposition of restitution requires a causation nexus, the illegally set trap caused Gage's death.

As to the Defendant's objections to the amount of restitution imposed, the State responds that a trial court in a criminal case need only set restitution that is "reasonable"; a precise calculation of actual loss is unnecessary and that the victim's testimony supports the trial court's restitution order. Finally, the State concedes that the trial court made no finding as to the Defendant's ability to pay but contends that such an omission "should not be fatal error."

When the defendant challenges the restitution amount ordered by the trial court, this Court will utilize a de novo standard of review with a presumption that the trial court's ruling was correct. T.C.A. § 40-35-401(d) (2006); *State v. Johnson*, 968 S.W.2d 883, 884 (Tenn. Crim. App. 1997). The purpose of ordering restitution is to compensate the victim and to punish and rehabilitate the defendant. *Johnson*, 968 S.W.2d at 885. "In determining the amount and method of payment or other restitution, the court *shall* consider the financial resources and future ability of the defendant to pay or perform." T.C.A. § 40-35-304 (d) (2006) (emphasis added); *State v. Bottoms*, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001). After all, "[a]n order of restitution which obviously cannot be fulfilled serves no purpose for the appellant or the victim." *Johnson*, 968 S.W.2d at 886. There is "no formula for determining restitution," but the amount must be "reasonable" and "must be based upon the victims pecuniary loss and the financial condition and obligations of the defendant; and the amount ordered to be paid does not have to equal or mirror the victim's precise pecuniary loss." *Johnson*, 968 S.W.2d at 886; *State v. Smith*, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994). Pecuniary loss is defined as "(1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant; and (2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense." T.C.A. § 40-35-304(e).

A defendant ordered to pay restitution "shall be responsible for the payment of the

restitution until the expiration of the sentence imposed by the court, and any payment or performance schedule established by the court shall not extend beyond the expiration date." T.C.A. § 40-35-304(g)(2); *Bottoms*, 87 S.W.3d at 108. "Any unpaid portion of the restitution ordered may be converted into a civil judgment." T.C.A. § 40-35-304(h)(1).

In general, only "the individual or individuals against whom the offense was actually committed" are victims for purposes of restitution. *State v. Alford*, 970 S.W.2d. 944 (Tenn. 1998); *see* T.C.A. § 40-35-304. The *Alford* court held that an insurance company that paid the medical expenses of the victim of a defendant's commission of reckless endangerment was not a victim for purposes of restitution. *Id*. In *State v. Douglas Edward Mackie*, a panel of this Court held that a woman to whom the defendant sold a stolen shed was not a victim for purposes of recovering restitution through the defendant's conviction for stealing the shed. E2008-00816-CCA-R3-CD, 2009 WL 400645, *2-5 (Tenn. Crim. App., at Knoxville, Feb. 18, 2009), *perm. app. denied* (Tenn. June 22, 2009). The panel explained that the woman could not receive restitution because her loss of the money she paid the defendant for the shed was not the "direct result" of the defendant's theft of the shed, because the defendant completed the theft before he sold the woman the shed. *Id*. at 5.

Individuals or organizations the State has charged with caring for a victim also are victims under the restitution statute. *State v. Webb*, 130 S.W.3d 799, 836 (Tenn. Crim. App. 2003) (holding that a humane society that cared for animals seized from a defendant who committed animal cruelty is a victim because statute obligates state-sponsored shelters to care for such animals). An individual or organization that voluntarily assumes care of a victim, however, is not a victim for purposes of restitution. *See State v. Stanley A. Gagne*, No. E2007-02071-CCA-R3-CD, 2009 WL 331327, *2-3 (Tenn. Crim. App., at Knoxville , Feb. 11, 2009), *no Tenn. R. App. P. 11 application filed*.

In this case, the Defendant was ordered to pay restitution to the owner of a dog for the value of the dog killed by a trap that was set illegally by the Defendant. We must first address the threshold legal question of whether the dog's owner is a victim who many properly receive restitution in this case. The trapping regulations the Defendant violated seek to prevent the foreseeable consequences of an improperly set or maintained trap, which include harm to human and animal life. Harm to animal life can result in veterinary expenses and, if the animal is killed, can deprive the owner of the animal's value. In our view, animals and their owners are within the class of victims against whom a violator of trapping regulations commits his crime. *See Alford*, 970 S.W.2d at 945. Further, an illegally set trap that kills an animal "directly results" in financial loss to the animal's owner because the loss is immediate and requires no further action by the defendant. *See Mackie*, 2009 WL 400643, at *2-5. As such, the owner of an animal killed by an illegally set trap is a victim for purposes of restitution. We conclude that Baggett, the owner of the dog killed in this case,

4

is a victim of the Defendant's violation of trapping regulations and, thus, may receive restitution for the loss of the dog.

The Defendant also challenges the amount of restitution ordered in this case. The process for determining a restitution amount is a two-step process: the trial court must first determine the pecuniary loss to the victim, and then it must determine how much of that amount the defendant can reasonably be expected to pay. *See Johnson*, 968 S.W.2d at 886; *State v. Wendell Gary Gibson*, No. M2001-01430-CCA-R3-CD, 2002 WL 1358711, at *3 (Tenn. Crim. App., at Nashville, Jun. 24, 2002), *no Tenn. R. App. P. 11 application filed*.

At the sentencing hearing, Baggett, an experienced bird dog owner and trainer, testified he bought Gage for $2500 and could have sold Gage for between $5000 and $8000. The Defendant introduced nothing to refute these figures. Therefore, the evidence in the record substantiates that Gage was worth $5500 and, thus, that Baggett suffered a pecuniary loss of $5500 when the Defendant's trap resulted in Gage's death.

The trial court did not, however, consider how much of Baggett's pecuniary loss the Defendant could reasonably be expected to pay. *See* T.C.A. § 40-35-304(e); *Bottoms*, 87 S.W.3d at 108. The Defendant testified at the sentencing hearing that he has been on Social Security Disability since 1986, that he was hospitalized for six months between his indictment and his trial in this case, and that he has medical debt in excess of one million dollars. The record does not show that the trial court considered this testimony when it set the amount of the Defendant's restitution. Instead, the court concluded, "Here's what I think . . . . I think, based upon the testimony I've heard, the value of the dog was $5,500.00. That's the restitution." The record, therefore, does not demonstrate that the trial court took into account the Defendant's fixed income, his health, and his considerable debt. As such, we cannot presume that the trial court's order of restitution was correct. T.C.A. § 40-35-401(d); *Johnson*, 968 S.W.2d at 884. Accordingly, we remand the case to the trial court to consider the Defendant's financial resources and future ability to pay in determining the appropriate restitution in this case. T.C.A. § 40-35-304(d) (2006).

### III. Conclusion

After a thorough review of the evidence and applicable authorities, we conclude the trial court erred when it ordered the Defendant to pay $5500 in restitution without considering the Defendant's financial resources and future ability to pay. As such, we remand this case to the trial court for further proceedings consistent with this opinion.

_____
ROBERT W. WEDEMEYER, JUDGE

5