# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs October 15, 2013

## STATE OF TENNESSEE v. ANGELO JOHN AMALIO, ALIAS ANGELO GUSTAVO AMALIO

**Appeal from the Criminal Court of Hamilton County**
No. 285937          Don W. Poole, Judge

No. E2013-00526-CCA-R3-CD - Filed November 20, 2013

Angelo John Amalio, alias Angelo Gustavo Amalio ("the Defendant") pleaded guilty to two counts of aggravated assault and one count of public intoxication. The plea agreement provided that the Defendant would serve an effective sentence of five years to be suspended to supervised probation following service of eleven months, twenty-nine days' incarceration, with restitution to be determined by the trial court. After the restitution hearing, the trial court ordered the Defendant to pay $3,600 in restitution to the victim. On appeal, the Defendant challenges the amount of restitution imposed by the trial court and claims that the trial court failed to consider the Defendant's ability to pay. Upon a thorough review of the record, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments
of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Hilary Hodgkins (on appeal) and Andrew D. Watts (at plea and restitution hearings), Chattanooga, Tennessee, for the appellant, Angelo John Amalio.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William H. Cox, III, District Attorney General; and Jason Demastus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

On January 24, 2013, the Defendant pleaded guilty to two counts of aggravated assault and one count of public intoxication. These charges arose from an altercation on August 23, 2012, between the Defendant in one vehicle and the victim, Myron Walker, in another vehicle.[1] Pursuant to the Defendant's plea agreement,[2] the trial court sentenced the Defendant to five years to be suspended on supervised probation after service of eleven months, twenty-nine days' incarceration, with restitution to be determined by the trial court. On February 18, 2013, the trial court held a hearing to determine the amount of restitution owed by the Defendant.

At the restitution hearing, Myron Walker testified that, as a result of the incident with the Defendant, his vehicle sustained damages. He identified two documents from Hi Tech Transmission, which indicated repairs performed on the vehicle in the amounts of $1,283.52 and $240.34. He also identified a document from Mid-Century Insurance Company estimating Walker's out-of-pocket expense toward additional repairs in the amount of approximately $200. According to Walker, the damages amount estimated by the insurance company did not account for the damage to the rims of his vehicle. By his estimation, because his rims were customized, the total cost of replacing the rims would be approximately $2,000 to $2,500. He also replaced the front two tires, which cost $140 each.

Additionally, as a result of coming to court, Walker had lost four days of work. He stated that he earned $11 per hour and worked eight hours per day. Walker also spent approximately $40 in pain medication from this incident. He agreed that his total restitution request was approximately $4,895.57.

On cross-examination, Walked explained what happened to him and his vehicle as follows: "My car was more than rear-ended, my car was bumped from side to side and every way. [The Defendant] chased me, he pursued me. So my car was hit from the left, on the passenger side, the driver side, as [the Defendant] pursued me and chased me." When Walker was asked how his vehicle sustained transmission damage, he answered, "The transmission damage was when [the Defendant] got behind me and mashed his gas at full strength, while I was on brakes trying to stop at a light while he was trying to push me into ongoing traffic to kill me." Walker explained that his rims were damaged because the

---

[1] This type of incident commonly is referred to as "road rage."

[2] The guilty plea transcript is not included in the record on appeal. We glean all information regarding the Defendant's guilty plea from his guilty plea petition and the trial court's subsequent judgments.

Defendant "bumped [his vehicle] several times and knocked [it] up on sidewalks several times."

On redirect examination, Walker stated that he previously had no issues with his vehicle until this incident. The transmission issues began immediately after his encounter with the Defendant.

The Defendant testified that, as he was turning right from one street to another,

[t]here was a white Chevy Caprice turning left, coming towards me but making a left-hand turn. I felt I had the right of way, the light was green, there was no yield to me. So when we made the turn, we almost hit each other, it [sic] basically what happened. I turned into the near lane, he almost, you know, he turned and didn't leave me the right of way and he kind of went a little bit into the center lane and I had just picked up the car from the dealership about three hours prior to this, and so there was some horn blowing, some obscene hand gestures. I did use some racial language and it was kind of back and forth between his passenger and one of my passengers.

. . . .

They kind of got in front of me and I thought that was it and then I heard something hit my car. I heard it, I didn't see where it was, but . . . my friend . . . pointed . . . out the windshield where his passenger had thrown something out the window and hit the windshield of my car and spider-webbed the windshield.

He got in front of me at some point, coming up to another light, and the light was red. And when I got up to him, I did, I hit him, you know, I bumped him to let him know I was angry, you know.

The Defendant further testified that he might have hit Walker one other time during this incident, but, in both instances, he hit the rear of Walker's vehicle. He denied, therefore, hitting or damaging the side, rims, or tires of Walker's vehicle.

The trial court questioned the Defendant regarding his financial status, and the Defendant testified that he earned $17 per hour as an electrician in Chattanooga. He agreed that he would resume working as an electrician after the completion of his incarceration. On redirect examination, he stated that he currently owed approximately $40,000 in back child support in Michigan.

At the conclusion of the restitution hearing, the trial court stated,

> [S]ometimes it's hard to understand this, that when restitution is set as part of a plea or punishment, it has to be strictly by the proprietary [sic] damage that Mr. Walker has served, has encountered, but it also has to be based, somewhat, on the ability of [the Defendant] to pay that damage, and sometimes that results in the victim looking like he walks away thinking he is the victim [sic], and I don't want that to be the case. [The Defendant] . . . should pay a reasonable and realistic amount to Mr. Walker for the damage.

The trial court considered the $4,895.57 in alleged damages to Walker's vehicle and, after considering the age of his vehicle, set the restitution at $3,600, to be paid in increments of $150 per month. The court ordered the Defendant to commence paying restitution beginning thirty days after release from custody. The Defendant timely appealed the trial court's order of restitution.

## Analysis

The Defendant argues on appeal that his restitution is improper because the trial court failed to consider the Defendant's ability to pay and erred in determining the amount of restitution. A trial court "may direct a defendant to make restitution to the victim of the offense as a condition of probation." Tenn. Code Ann. § 40-35-304(a) (2010). Restitution is imposed "not only to compensate the victim but also to punish and rehabilitate the guilty." State v. Johnson, 968 S.W.2d 883, 885 (Tenn. Crim. App. 1997) (citation omitted).

In determining restitution, a trial court must determine the victim's pecuniary loss, which is defined by statute as:

> (1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant, and
>
> (2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expense.

Tenn. Code Ann. § 40-35-304(e)(1)-(3). Additionally, "the trial court must consider what the defendant can reasonably pay given the [defendant's] means and future ability to pay." Johnson, 968 S.W.2d at 886 (citing Tenn. Code Ann. §§ 40-35-303(d)(10), -304(d); State v. Smith, 898 S.W.2d 742 (Tenn. Crim. App. 1994)).

We discern no error by the trial court in ordering the Defendant, upon thirty days after completion of his incarceration, to pay $150 per month for a total of $3,600 in restitution. The record reflects that the State presented evidence of monetary loss to the victim in the amount of $4,395.91 to $4,895.91.[3] This included documented receipts of repairs to the victim's vehicle in the amounts of $1,283.52 and $240.34 and an estimate of Walker's out-of-pocket cost of $200.00 for further repairs. Additionally, the victim, Myron Walker, testified that the total cost of replacing the rims would be $2,000 to $2,500. He also replaced the front two tires, which cost $140 each. He lost wages from four days of work, where he earned $11 per hour and worked eight hours per day. Walker also paid $40 for pain medication.

Although Walker did not provide documentation to substantiate his estimation toward replacement of his vehicle's rims, tires, and lost wages, this Court has held that a victim's testimony in this regard can be sufficient to establish a restitution amount. See Johnson, 968 S.W.2d at 886. The trial court noted that it was reducing the total restitution amount based on the age of Walker's vehicle. Thus, we hold that the trial court did not err in determining the amount of restitution owed by the Defendant.

Regarding the trial court's consideration of the Defendant's ability to pay, the trial court asked the Defendant questions about his employment and wages, noting later that it must consider the Defendant's ability to pay the restitution in determining the amount. The Defendant testified that he earned $17 per hour as an electrician in Chattanooga. He agreed that he would resume working as an electrician after the completion of his incarceration.

Although the Defendant testified that he owed $40,000 in back child support in Michigan, such proof does not completely eradicate his ability to pay. The Defendant's testimony suggested that Michigan had not yet imposed a payment plan as to an amount the Defendant was to pay monthly. Therefore, as of the time that the trial court ordered restitution, it could not have been calculated as part of the Defendant's monthly obligations. If Michigan, at a later date, imposes a monthly obligation toward payment of this back child support, the proper mechanism for the Defendant to challenge his restitution obligation would be under Tennessee Code Annotated section 40-35-304(f) ("A defendant . . . may petition the sentencing court to adjust or otherwise waive payment or performance of any ordered restitution or any unpaid or unperformed portion of the restitution. . . . If the court finds that the circumstances upon which it based the imposition or amount and method of payment or other restitution ordered no longer exist or that it otherwise would be unjust to require payment or other restitution as imposed, the court may adjust or waive payment of

---

[3] We note that the total amount of estimated damages calculated by this Court differs slightly from the amount alleged by the State, which was $4,895.57.

the unpaid portion of the restitution or other restitution to modify the time or method of making restitution.").

We conclude that the trial court did not err in ordering the Defendant to pay $3,600 in restitution, to be paid in increments of $150 per month beginning thirty days after completion of his time in incarceration. Accordingly, the Defendant is entitled to no relief.

## **Conclusion**

The trial court did not err in its order of restitution. Accordingly, the judgments of the trial court are affirmed.

_____
JEFFREY S. BIVINS, JUDGE