## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 21, 2022

## STATE OF TENNESSEE v. BYRON COLE TUCKER

**Appeal from the Circuit Court for Giles County**
**No. 2020-CR-15278      Stella L. Hargrove, Judge**

_____

## No. M2021-00839-CCA-R3-CD

_____

The defendant, Byron Cole Tucker, pled guilty to aggravated assault for which he received a sentence of five years to be served in the Tennessee Department of Correction, suspended to five years of supervised probation. The trial court also ordered the defendant pay $39,028.49 in restitution through monthly payments of no less than $350. On appeal, the defendant challenges the trial court's restitution order. After reviewing the record and considering the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER, JJ., joined.

Brandon E. White (on appeal), Columbia, Tennessee, and Hershell D. Koger (at hearing), Pulaski, Tennessee, for the appellant, Byron Cole Tucker.

Herbert H. Slatery III, Attorney General and Reporter; T. Richard D. Douglas, Senior Assistant Attorney General; Brent A. Cooper, District Attorney General; and Rebecca S. Parsons, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

During a night of heavy drinking, the defendant, Byron Cole Tucker, broke the jaw of the victim, James Gray. The defendant subsequently entered an open guilty plea to aggravated assault. During the hearing, defense counsel provided the following facts underlying the plea:

. . . [B]ack on January 30th of 2020, if the State were to go to trial on this, I believe the State could introduce proof that on the date in question the [d]efendant was at a home with other persons, including the victim[,] [] another young man, and there was a bit of a fisticuffs that went on that started, at least in part, with [the victim] spitting on the [d]efendant.

It turned into a much more violent altercation with ultimately the [d]efendant striking [the victim's] face several times and breaking [the victim's] jaw. So[,] that would be a serious bodily injury based aggravated assault.

Regarding the terms of the guilty plea, the parties agreed to the following limitations as recommended by the State:

1. The sentence, if any, shall be 5 years.
2. The service of [the] sentence will be suspended to 5 [years'] probation, or
3. The court will have the option of putting [the] defendant on a term of diversionary probation of not less than 5 years, and
4. The court will determine the amount of monthly restitution the defendant shall pay, and
5. The defendant agrees that the total amount of restitution is $39,028.49.

The trial court accepted the guilty plea on April 26, 2021, and conducted a sentencing hearing on June 29, 2021.

During the sentencing hearing, the State entered into evidence the presentence report accompanied by the testimony of Kelsey Foster, the Tennessee Department of Correction officer who prepared the report. Officer Foster detailed two versions of the assault as provided by the defendant. One provided on January 31, 2020, and a second provided during the presentence investigation. In his January description of the assault, the defendant claimed:

We were at a friend's house on Campbellsville Road. [The victim] and I had both been drinking. I was buzzing a little and he was drunk. I told him to stop calling me names and trying to fight multiple times. At that point, he charged at me, and I defended myself. . . . I did not swing at [the victim] until he spit on me. I apologized[,] and he accepted it right after it happened. I did not swing to knock him unconscious. I simply was trying to calm him down and went about it the wrong way.

- 2 -

During the presence investigation, the defendant described the assault, as follows:

> The victim [] and I were friends/roommates. We were at a party in Giles County. We had both been drinking. [The victim] wanted to fight me, so we wrestled around a little bit. After we wrestled around a few minutes, I threw [the victim] on the couch and told him to stop. [The victim] then spit on me. That is when I hit him several times. I did not think I hit him that hard, and I had no intention of breaking his jaw or hurting him that bad[ly].

Additionally, during the presence investigation, the defendant reported he was twenty-two years old and had a son. The defendant used marijuana and Xanax in the past and was convicted for possession of Xanax in 2018. In researching the defendant's criminal history, Officer Foster did not find a record for the alleged possession of Xanax conviction but found the defendant was convicted for driving under the influence in May 2021. The defendant was also charged with additional driving offenses in relation to the DUI offense, though the additional charges were dismissed. Officer Foster also testified that pursuant to the Strong R Assessment, the defendant "leveled out as a minimum [risk] offender."

Regarding his work history, the defendant reported that he previously worked at A1 Home Builders and RJ Watkins & Son Construction, making $15 and $14 per hour, respectively. At the time of the presence investigation, the defendant reported that he worked at Aviagen, a chicken farm, making approximately $400 per week. Officer Foster did not recall if the defendant worked full-time or part-time and was unable to verify the defendant's employment status at Aviagen.

Regarding the defendant's financial status, he provided that he does not own any real property, owns a 2001 Jeep Cherokee worth approximately $300, and carries an over $1000 debt for a Mazda 6 for which he makes monthly payments of $200. The defendant reported that he receives $350 per month in food stamps and his additional expenses include: "$500 a month in rent; $140 weekly [for] daycare[1]; $55 a month on a phone bill; and $50 a month to Xpress Med." The defendant specified he could pay $50 towards restitution, $50 towards costs, and $50 towards fines each month. Officer Foster testified that the defendant also expressed his desire to provide for his son.

---

[1] The presence report indicates the defendant splits this payment with his son's mother, and thus, the defendant's daycare expense is approximately $280 per month.

The victim also testified, stating he was friends and roommates with the defendant at the time of the assault. Prior to the assault, he and the defendant drank vodka at a friend's house. Both were "pretty heavy drinkers at the time" and both used marijuana "regularly." The State entered into evidence two videos showing the victim and the defendant's interactions both prior to and during the assault. The victim denied spitting on the defendant and denied being in a fight with the defendant. Regarding the victim's memory of the assault, he stated:

> What I remember is coming to, being yelled at, looking up and then blacking back out. . . . I recall that. Literally, like, I was -- I remember coming to because someone was yelling at me. I didn't know it was the [d]efendant. I had no clue who it was because I was drunk. But I came to, looked up, and it was lights out. I don't remember anything.

After the assault, the victim left the party and blacked out. When he woke up, his face was swollen and he was in "agonizing pain." The victim called his father who took him to the hospital. The victim ultimately received jaw surgery which required his jaw to be wired shut for "about two and a half months." As a result of the surgery, the victim developed an infection in his mouth, had to have one tooth pulled, was limited to a liquid diet, moved in with his grandparents, and could not work for about 3 months. He described his post-surgery pain as a "12" out of 10. The victim's medical care resulting from the assault totaled approximately $39,000.

The victim testified that he did not agree to the plea deal and requested a no-contact order from the trial court. Regarding the defendant, the victim stated, "I mean, I don't think he believes that he's done anything wrong. So, I mean, I think he should be punished and have to live with this and realize, hey, I need to change." Finally, the victim stated he has "video proof of [the defendant's] threatening other people, doing the same thing."

At the conclusion of the hearing, the trial court imposed a sentence of five years to be served in the Tennessee Department of Correction, suspended to five years of supervised probation. The trial court accepted the agreed-upon restitution amount of $39,028.49 and ordered the defendant to "pay a minimum amount of $350 per month toward restitution/costs." As a condition of sentencing, the trial court also ordered the restitution amount to be reviewed each year and imposed a no-contact order. Following the imposition of the sentence, the defendant filed this timely appeal.

### *Analysis*

On appeal, the defendant argues the trial court abused its discretion "when it found that [the defendant] has the ability to pay $350.00 per month toward restitution," noting "at

best, [he] only has the ability to pay $150.00 per month toward restitution." The State contends the trial court properly sentenced the defendant but concedes the court failed to comply with the applicable statute when ordering restitution. Upon our review, we conclude the trial court did not err in imposing restitution in this case.

This Court reviews challenges to the amount of restitution ordered by the trial court under an abuse of discretion standard, affording a presumption of reasonableness to the trial court's ruling. *State v. David Allan Bohanon*, No. M2012-02366-CCA-R3-CD, 2013 WL 5777254, at *5 (Tenn. Crim. App. Oct. 25, 2013). "A holding of abuse of discretion reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case." *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999) (citations omitted). "[T]he burden of showing that the sentence is improper is upon the appealing party." Tenn. Code Ann. § 40-35-401 (2014), Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

"A sentencing court may direct a defendant to make restitution to the victim of the offense as a condition of probation." Tenn. Code Ann. § 40-35-304(a). "While there is no set formula for determining restitution, above all, the restitution amount must be reasonable." *State v. John N. Moffitt*, No. W2014-02388-CCA-R3-CD, 2016 WL 369379, at *4 (Tenn. Crim. App. Jan. 29, 2016), *perm. app. denied* (June 24, 2016) (citation omitted). "Whenever the court believes that restitution may be proper or the victim of the offense or the district attorney general requests, the court shall order the presentence service officer to include in the presentence report documentation regarding the nature and amount of the victim's pecuniary loss." Tenn. Code Ann. § 40-35-304(b) (2014). In this context, "pecuniary loss" includes:

(1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant; and

(2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expense.

Tenn. Code Ann. § 40-35-304(e)(1), (2) (2014). "In determining the amount and method of payment or other restitution, the court shall consider the financial resources and future ability of the defendant to pay or perform." Tenn. Code Ann. § 40-35-304(d) (2014). Therefore, "the amount of restitution a defendant is ordered to pay must be based upon the victim's pecuniary loss and the financial condition and obligations of the defendant; and the amount ordered to be paid does not have to equal or mirror the victim's precise pecuniary loss." *State v. Smith*, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994). "This is

because '[a]n order of restitution which obviously cannot be fulfilled serves no purpose for the appellant or the victim.'" *John N. Moffitt*, 2016 WL 369379, at *4 (quoting *State v. Johnson*, 968 S.W.2d 883, 886 (Tenn. Crim. App. 1997)).

"The court shall specify at the time of the sentencing hearing the amount and time of payment or other restitution to the victim and may permit payment or performance in installments." Tenn. Code Ann. § 40-35-304(c) (2014). "The court may not, however, establish a payment or schedule extending beyond the expiration of the sentence." *John N. Moffitt*, 2016 WL 369379, at *5; Tenn. Code Ann. § 40-35-304(g)(2). "Notwithstanding any law to the contrary, upon expiration of the time of payment or the payment schedule imposed pursuant to subsection (c) or (g), if any portion of restitution remains unpaid, then the victim or the victim's beneficiary may convert the unpaid balance into a civil judgment in accordance with the procedure set forth in this subsection (h)." Tenn. Code Ann. § 40-35-304(h)(1).

Here, the record indicates the trial court properly considered the restitution factors required by statute before ordering the defendant to pay $39,028.49 to the victim through monthly installment payments of at least $350. As a condition of his guilty plea, the defendant agreed to a total restitution amount of $39,028.49, and the trial court had two options regarding the defendant's sentence, either a five-year term of supervised probation or a diversionary term of not less than five years. Thus, after imposing a suspended sentence of five years of supervised probation, the trial court's only remaining decision was to determine what the defendant could reasonably contribute each month towards restitution.

The defendant asks this Court to reduce the total amount of restitution to either $21,000, to reflect a $350 monthly payment over the five-year probationary term, or $9,000, to reflect a $150 monthly payment over the five-year probationary term. The State argues the defendant has waived his ability to challenge the total amount of restitution imposed "because it was an agreed-upon condition that was part of his guilty plea." While we agree the defendant cannot seek appellate review of the $39,028.49 total restitution amount, we note, the defendant can appeal the portion of the restitution order regarding "the amount of monthly restitution the defendant shall pay" as it was not agreed to under the terms of the plea. Tenn. R. Crim. P. 37(b)(2)(B). Accordingly, appellate review of the $350 monthly restitution payment is permitted.

At the sentencing hearing, the State provided evidence of the victim's pecuniary loss, the defendant's financial resources, and the defendant's future ability to pay. Tenn. Code Ann. § 40-35-304(b), (d) (2014). The victim testified he incurred medical bills totaling $39,028.49 as a result of the assault, the presentence report included the victim's request for restitution in that amount, and, as noted, the parties agreed to the total restitution

amount requested. Thus, the pecuniary loss suffered by the victim was substantiated by evidence in the record and was agreed to by the defendant. Tenn. Code Ann. § 40-35-304(e)(1) (2014).

Regarding the defendant's financial condition, the record indicates that at the time of sentencing, the defendant was twenty-two years old, gainfully employed, in good physical health, and afforded the opportunity of alternative sentencing. The defendant had previously maintained several jobs, earned a high school diploma and some college credits, and received food stamp assistance. The defendant's reported monthly expenses totaled approximately $1,085 while his reported monthly income totaled approximately $1600. The record indicates the trial court considered this evidence before imposing a payment schedule of at least $350 per month. The trial court stated:

> I've kind of tried to do it as much as I can. You know, I'm limited as to what I can do. I think that I am bound by the law on this.
>
> I do think it has to be a figure that I think can somehow be paid. I don't mind it being somewhat onerous on him, because it needs to be onerous. But in the same sense, I can't say you've got to pay this and then the reality is that's just not going to get paid.
>
> . . .
>
> Right. And, frankly, he doesn't at least as far as we know, he doesn't have any other resources for the most part to draw from if what we have been presented is correct. I don't think $350 a month is outside the range of reasonableness based upon that.
>
> I would put in there that -- and y'all tell me this, I would say every year we need to review what his income is for that year and then see if he has had an increase in income, then we can make a commensurate increase in what should be paid.
>
> Because I would hope over time he would start making more. I would hope he would want to do that.
>
> . . .
>
> I think -- as where it stands, if we're looking at $350, that's right at one-fourth of his income. That's a pretty significant amount, especially if he has a child to take care of.

. . .

            But within his abilities.

        Upon our review, we agree with the determination of the trial court. While the $350 monthly restitution payment constitutes almost one-fourth of the defendant's monthly income, the record indicates his income can support the payment. In addition, the record indicates that the defendant is capable of maintaining employment and providing for both himself and his son, and nothing suggests that the defendant's future income or job status is limited to his current circumstances. Thus, the record indicates the trial court properly considered the victim's pecuniary loss, the defendant's financial resources, and the defendant's future ability to pay when ordering the payment schedule and determining a reasonable monthly payment to be $350. The defendant is not entitled to relief.

        Finally, we note, both parties suggest the trial court's restitution order does not comply with the applicable statute because the defendant cannot satisfy the $39,028.49 amount under the imposed payment schedule before the expiration of his sentence. Upon our review of the statute, however, we conclude the defendant is not required to satisfy the full restitution amount by the conclusion of his sentence. Rather, the trial court is simply not permitted to impose a payment schedule beyond the expiration of the sentence imposed. *John N. Moffitt*, 2016 WL 369379, at *5; Tenn. Code Ann. § 40-35-304(g)(2) (2014).

        As contemplated by the trial court, a defendant's financial condition might change over the course of an imposed sentence. Thus, a trial court should be able to adjust its restitution order based upon any changes, positively or negatively, to a defendant's financial condition that may arise during an imposed sentence. *See* Tenn. Code Ann. § 40-35-304(f). While we find the possibilities endless, some changes that might affect a defendant's financial condition include changing jobs and earning either a higher or lower salary, inheriting money, or working additional jobs to increase one's income. The trial court clearly took these possibilities into consideration when it ordered an annual review of the defendant's financial condition in this case. In doing so, the trial court will be able to determine if the defendant's financial condition has changed and if the imposed payment schedule remains reasonable. And, as noted, the restitution statute makes clear that any portion of restitution that remains unpaid at the expiration of the defendant's sentence can be converted into a civil judgment. Tenn. Code Ann. § 40-35-304(h)(1) (2014). Thus, the victim's ability to collect the entire restitution amount does not expire with the defendant's sentence.

Accordingly, we conclude the trial court conducted a full and proper restitution hearing, after which it imposed a reasonable restitution order that complies with the restitution statute. The defendant is not entitled to relief.

### *Conclusion*

Based upon the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
J. ROSS DYER, JUDGE