IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 23, 2014

**STATE OF TENNESSEE v. LLOYD DANIEL THOMPSON**

**Appeal from the Criminal Court for Knox County**
**No. 100605     Mary Beth Leibowitz, Judge**

**No. E2013-01850-CCA-R3-CD - Filed June 25, 2014**

The defendant, Lloyd Daniel Thompson, pled guilty in the Knox County Criminal Court to theft of property valued at $10,000 or more but less than $60,000, a Class C felony, and was sentenced by the trial court as a Range I, standard offender to three years in the Department of Correction, suspended to supervised probation. The trial court also ordered that the defendant pay $40,000 in restitution to the victim. In a timely appeal to this court, the defendant argues that the evidence at the restitution hearing did not support the trial court's determination of the victim's losses and that the trial court erred in ordering him to pay $40,000 in restitution without considering his resources and future ability to pay. Following our review, we affirm the trial court's finding that the victim suffered $40,000 in losses but remand for the trial court to determine the defendant's current financial resources and future ability to pay restitution.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part and Remanded**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROGER A. PAGE, JJ., joined.

Mark E. Stephens, District Public Defender; Emily A. Herbert (on appeal) and Kathryn Merwald (at hearing), Assistant Public Defenders, for the appellant, Lloyd Daniel Thompson.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael A. Meyer, Deputy Attorney General; Randall E. Nichols, District Attorney General; and Patricia Cristil, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant was indicted by the Knox County Grand Jury for two counts of theft of property valued at $10,000 or more but less than $60,000 based on his having stolen coins and jewelry from the home of his uncle, for whom he had been providing caregiver services. He subsequently pled guilty to one of the counts in exchange for a Range I, standard offender sentence of three years in the Department of Correction, with the trial court to consider his request for probation and to determine the amount of restitution following later sentencing and restitution hearings. Pursuant to the terms of his plea agreement, the second count of the indictment was nolle prosequied.

At the guilty plea hearing, the prosecutor recited the evidence the State would have presented had the case proceeded to trial:

> Your Honor, if called to trial in this matter, the State would call those witnesses listed on the indictment. The substance of their testimony would be that Miss Janet Dunlap's husband needed home care, and the defendant was to provide that. She had left her husband under the care of the defendant . . . .
>
> When she returned she found several items missing. [The defendant] had pawned some of her property at Knox Jewelry and Loan on Western Avenue. The approximate value of all the items missing was forty thousand dollars ($40,000).

At the August 8, 2013 sentencing and restitution hearing, the victim, Janet Dunlap, testified that she was an over-the-road truck driver and had hired the defendant, her husband's nephew, in July 2011 to come to their home twice a week to check on her husband, who had macular degeneration and who had since died. During that time, a lot of jewelry and some cash and coins disappeared from the home, and she later learned that the defendant had sold some of the missing items to a pawnshop. She said she had prepared a list of the stolen items, some of which were still at the pawnshop and some of which had already been sold or were still missing. Among the still-missing items were the following: $1700 in cash and coins, including silver coins with a face value of $1200 but with a much higher actual value, as they included Walking Liberty dollars and other collectibles that her husband had spent a lifetime accumulating; an eight-inch, 14-carat yellow gold bracelet; a 30-inch, 14-carat gold rope chain necklace; a white gold cross with 42 encrusted diamonds; a 14-carat gold ring with a two-carat diamond in the center and a one-carat diamond on each

side; a wedding ring with two-carat diamonds; a 14-carat gold garnet ring; her father's gold wedding ring; an 18-carat gold locket; an 18-inch, three-strand pearl necklace; an eight-inch, three-strand pearl bracelet; a sterling silver locket with a serpentine chain; a gold ring with "Dad" in the center and two diamonds on the side, which their daughter had bought for her husband; a five-dollar gold piece on a chain designed so that it did not have any holes cut in it; and a black and ivory cameo turn-of-the-century brooch of a seated lady facing left. The victim testified that cameos in which the figure faces left are rare. More importantly, the cameo had once belonged to Helen Keller and had been given to the victim as a wedding gift when she was seventeen by Keller's cousin, Hazel Denine. The victim said she did not know its value, but after the theft she had searched online and seen a similar cameo that had been auctioned for $185,000.

The victim testified that she had kept her receipts for the jewelry in the same boxes in which she stored the jewelry and that many of the receipts went missing with the jewelry. She still had a few of them, however. All together, but not counting the coin collection or cameo brooch, she placed a value of at least $40,000 on the stolen items. On cross-examination, she recalled that her daughter had paid $780 for the gold "Dad's ring" when she was only sixteen years old; testified that she had a receipt dated November 19, 1995 that showed she had paid $500 for the 20-inch, 14-carat gold chain; estimated that she had paid between $900 and $1000 for the white gold chain and matching bracelet; recalled having spent a total of approximately $360 for the pearl necklace and matching bracelet, which she had purchased for her mother, who had died in 2004; remembered that the gold ring with the garnet birthstone cost $290 and that her wedding set, which was still missing, cost $2600 when she was seventeen; testified that she had paid $160 at an estate auction for the $5 gold piece; and testified that the remaining receipts she still had, that were difficult to read, were for $319.93 for a gold chain, $500 for a gold chain, and $160 for a pendant. She testified that the gold diamond-encrusted cross was a gift and that she had no idea how much it had cost. Finally, she testified that she had received a total of $1000 from her homeowner's insurance policy for her losses.

During closing argument, defense counsel directed the court's attention to the presentence report and the fact that the defendant suffered from a number of health conditions, including chronic obstructive pulmonary disease, for which he received $829 per month in social security disability payments. Defense counsel also pointed out that the defendant reported to the probation officer who prepared the report that he would be able to pay between $80 and $100 per month toward restitution and court costs. Counsel requested that the court take into consideration the defendant's limited and fixed income when ordering restitution.

At the conclusion of the hearing, the trial court sentenced the defendant to three years

of supervised probation, ordered that he pay court costs, and waived probation fees due to the fact that the defendant was on disability. The court further ordered that the defendant pay the CICA and litigation tax. As for the victim's losses, the court found that the cameo brooch would have been of "great value" due to its age and rarity, that the silver coin collection "surely was more valuable than" the $1200 face value of the coins, and that the current value of the gold jewelry would probably be "ten times" its purchase price due to the fact that gold prices had "sky rocketed" in recent years. The court therefore fixed the amount of restitution owed by the defendant at $40,000. The court recognized that the defendant would be unable to pay the full amount of the victim's losses, but nonetheless instructed the defendant to "do his best" and "work steadily at that" during his three years of supervised probation.

The judgment, which referenced a separate order of restitution, was entered on August 8, 2013. The following day, the trial court entered a written order of restitution in which the defendant was ordered to pay $40,000 to the victim, along with an additional amount of five percent to the clerk of the court as an administrative fee. The trial court left blank the portion of the pre-printed restitution order that states the rate at which the defendant was to pay the $40,000 in restitution. Thereafter, the defendant filed a timely notice of appeal to this court arguing that the trial court erred in establishing the amount of the victim's losses and the amount of restitution he owed.

## ANALYSIS

### I. Victim's Losses

The defendant challenges the trial court's finding that the victim suffered $40,000 in losses based on his theft of her property, arguing, among other things, that the trial court's conclusion that the cameo brooch was "probably extraordinarily priceless" is "pure speculation." He asserts that the total value of the other unrecovered items, less the $1000 insurance payment and affording a "generous assumption" to the items for which the victim could not recall or did not know the values, is only $7890. The defendant bases the figures used in his calculations on the prices that the victim recalled having paid for the jewelry at the time of its purchase. The State responds by arguing that the trial court's assessment of $40,000, which was based on an estimate of the cost to replace at least some of the stolen items, was reasonably related to the victim's financial losses. We agree with the State.

Tennessee Code Annotated section 40-20-116 mandates restitution of either the property or, if that is not possible, the value of the property in cases in which a defendant has been convicted of "stealing or feloniously taking or receiving property[.]" Tenn. Code Ann. § 40-20-116(a) (2010). The section of our code that addresses the ordering of restitution as

-4-

a condition of probation provides in pertinent part:

> (a) A sentencing court may direct a defendant to make restitution to the victim as a condition of probation.
>
> (b) Whenever the court believes that restitution may be proper or the victim of the offense or the district attorney general requests, the court shall order the presentence service officer to include in the presentence report documentation regarding the nature and amount of the victim's pecuniary loss.
>
> (c) The court shall specify at the time of the sentencing hearing the amount and time of payment or other restitution to the victim and may permit payment or performance in installments. The court may not establish a payment or performance schedule extending beyond the statutory maximum term of probation supervision that could have been imposed for the offense.
>
> (d) In determining the amount and method of payment or other restitution, the court shall consider the financial resources and future ability of the defendant to pay or perform.
>
> (e) For the purposes of this section, "pecuniary loss" means:
>
> (1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant; and
>
> (2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expense.

Id. § 40-35-304(a)-(e) (2010).

"A victim seeking restitution must present sufficient evidence so the trial court can make a reasonable determination as to the amount of the victim's loss." State v. Bottoms, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001). Although it has to be "reasonable," there is no set formula and the amount of restitution "does not have to equal or mirror the victim's precise pecuniary loss." State v. Smith, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994). "[W]hile a victim's testimony standing alone may be sufficient to establish special damages for the purposes of restitution, the victim should explain how he or she arrived at the amount of damages requested." State v. Wendell Gary Gibson, No. M2001-01430-CCA-R3-CD,

2002 WL 1358711, at *2 (Tenn. Crim. App. June 24, 2002).

We conclude that the victim provided ample evidence to support the trial court's determination of her losses. Among other things, she testified that the silver coin collection with a face value of $1200 included collectible and rare silver Liberty dollars with a much higher actual value than the face value of the coins and that the ivory and black cameo was rare by virtue of the position of the lady and, moreover, of historical value due to its provenance. In both her victim impact statement and in her testimony, she said that, not counting the coin collection or the cameo, she placed a value of $40,000 on her stolen items. In support, she provided the purchase prices of various pieces of the stolen jewelry, including a $500 gold chain that was purchased in 1995, the $360 matching pearl necklace and bracelet that she had purchased for her mother, her $2600 wedding ring set that was purchased when she was seventeen, and the $780 gold ring that her daughter purchased for her husband when the daughter was sixteen. The victim's age is not in the record. However, in her victim impact statement in the presentence report dated July 31, 2013, the victim states that their only child, who is thirty-five years old, gave the gold "Dad's" ring to her husband when she was sixteen years old. She also states that her husband helped raise the fifty-three-year-old defendant, his nephew. It is clear, therefore, that much of the jewelry was purchased many years before the defendant's theft and, thus, that the purchase prices recited by the victim do not reflect current market value. Tennessee Rule of Evidence 201 provides that a trial court may take judicial notice of a "fact [that is] not subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Tenn. R. Evid. 201(b). The dramatic increase in gold prices in recent years is just such a fact of which the trial court may properly take judicial notice. Based on this evidence, we conclude that the trial court did not err in placing a value of $40,000 on the victim's stolen items.

## II. Amount of Restitution

The defendant also argues that the trial court did not give proper consideration to his ability to pay when ordering him to pay the victim $40,000 in restitution. The State agrees that the trial court did not give proper consideration to the defendant's ability to make monthly installment payments over the term of his sentence. The State further argues that the court also failed to give proper consideration to the defendant's resources, including his possible ownership interest in the house in which he lives, which belonged to his recently deceased mother. The State argues that the case should therefore be remanded to the trial court to determine the defendant's resources and future ability to pay and to set terms for monthly restitution payments. We, again, agree with the State.

-6-

In Bottoms, 87 S.W.3d at 108, this court explained the considerations of the trial court in ordering payment of restitution:

> In determining the amount and method of payment of restitution, the trial court must consider "the financial resources and future ability of the defendant to pay or perform." Tenn. Code Ann. § 40-35-304(d); see also State v. Johnson, 968 S.W.2d 883, 886 (Tenn. Crim. App. 1997) ("[T]he trial court, in determining restitution, must also consider what the appellant can reasonably pay. An order of restitution which obviously cannot be fulfilled serves no purpose for the appellant or the victim."); State v. Smith, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994) ("The trial court must further set an amount of restitution that the appellant can reasonably pay within the time that he will be within the jurisdiction of the trial court.").

Because the trial court did not give proper consideration to the defendant's financial resources and his future ability to pay, we remand the case to the trial court for further findings regarding the defendant's resources and future ability to pay, as well as for a determination of a reasonable amount of restitution, including the setting of a monthly payment plan, if appropriate.

## CONCLUSION

Based on the foregoing authorities and reasoning, the judgment of the trial court is affirmed in part and the case remanded to the trial court for further proceedings consistent with this opinion.

_____
ALAN E. GLENN, JUDGE