**STATE of Tennessee, Appellee,**

v.

**Mark SMITH, Appellant.**

**No. 02–C–01–9402–CC–00022.**

Court of Criminal Appeals of Tennessee, at Jackson.

Oct. 19, 1994.

Permission to Appeal Denied by the Supreme Court March 6, 1995.

Charles W. Burson, Atty. Gen. & Reporter, Rebecca L. Gundt, Asst. Atty. Gen., Nashville, James G. Woodall, Dist. Atty. Gen., Donald H. Allen, Asst. Dist. Atty. Gen., Jackson, for appellee.

A. Wayne Emmons (argued), Randall B. Tolley, Memphis, for appellant.

## OPINION

JONES, Judge.

The appellant, Mark Smith, was convicted of arson, a Class C felony, following his plea of guilty to the offense. The trial court sentenced the appellant pursuant to the Tennessee Community Corrections Act of 1985, Tenn. Code Ann. § 40–36–101, *et seq.* Finding that the appellant was a standard offender, the trial court imposed a Range I sentence consisting of six (6) years in the Department of Correction, of which eleven (11) months and twenty-nine (29) days is to be served in the Henderson County Jail, 300 hours of community service, and a $2,000 fine. The appellant was permitted to enter the work release program so that he could continue his employment. The appellant was also ordered to pay restitution in the sum of $92,111 "by making regulary monthly payments as best as possible."

The appellant's conviction is affirmed and the sentence is modified. This cause is remanded to the trial court for a hearing on the amount of restitution that the appellant should pay in this case and the determination of a sum certain that he must pay periodically to satisfy this amount.

The appellant was thirty-five years of age when he was sentenced. He was married to his wife for fifteen years and had an eleven year old son. The marriage terminated in divorce. The appellant had worked for the same company for eleven years. According to the investigation conducted by a community corrections officer, the appellant had never been arrested or convicted of a crime.

Several letters were written to the trial judge attesting to the appellant's good moral character, his standing in the community, and his involvement with his church. In addition, the medical report of a psychiatrist was introduced into evidence. The report reveals that the appellant was hospitalized for psychiatric problems on July 20, 1992. He was discharged on August 5, 1992. The diagnosis was "Major Depression with Psychosis." The doctor described the appellant's condition at the time of sentencing as "fragile." According to the doctor, if the appellant encountered "major depressors," he could suffer a recurrence of the psychotic depression.

In July of 1992, the appellant and his wife had an argument about one of their motor vehicles. The appellant's wife subsequently

went to her parent's home with her son. She called the appellant, advised him that she wanted a divorce, and told him she wanted him to leave the residence. The appellant was not on the best of terms with his own parents. When his wife advised him that she wanted a divorce, he decided that no one loved or cared about him. He decided to commit suicide.

The appellant considered several ways to commit suicide. He decided to burn the residence as well as himself. He obtained five one-gallon plastic milk containers filled with gasoline. He placed the gasoline inside the residence and turned on the heat in a bathroom. He subsequently went to sleep. When he awoke, he realized no one had called to check on him so he decided to continue with his suicide plan. He struck a match and an explosion ensued. The appellant was blown through the front door but he was not injured. He immediately went to the home of his parents in Decaturville. They took him to Memphis where he talked with a minister. The minister advised the appellant to retain an attorney. The attorney, realizing that the appellant was suicidal, recommended that he be hospitalized for his own well-being.

The trial court found that the appellant "has had some rather serious emotional problems and mental problems. There is no doubt whatever about that." However, the trial court further found that the appellant's conduct shortly before setting the residence on fire was "indicative of some person bent on some form of vengeance, revenge or sheer meanness."

## I.

### A.

■ When an accused challenges the length or the manner of service of a sentence imposed by the trial court, it is the duty of this Court to conduct a *de novo* review of the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40–35–401(d) (1990). However, there are exceptions to this requirement. First, the requirement that this Court presume the

determinations made by the trial court are correct is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991). Second, the presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused. *State v. Bonestel,* 871 S.W.2d 163, 166 (Tenn.Crim. App.1993). Third, the presumption does not apply when the determinations made by the trial court are predicated upon uncontroverted facts or a document, such as a presentence report or medical report. *Bonestel,* 871 S.W.2d at 166.

■ In conducting a *de novo* review of a sentence, this Court must consider:

(a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation.

*State v. Scott,* 735 S.W.2d 825, 829 (Tenn. Crim.App.1987) (citing Tenn. Code Ann. §§ 40–35–103 and –210).

■ When the accused raises sentencing issues in this Court, the accused has the burden of establishing that the sentences imposed by the trial court were erroneous. Sentencing Commission Comments to Tenn. Code Ann. § 40–35–401(d) (1990); *Ashby,* 823 S.W.2d at 169; *State v. Fletcher,* 805 S.W.2d 785, 786 (Tenn.Crim.App.1991). In this case, the appellant has the burden of establishing that the length of confinement is excessive and that the trial court abused its discretion in requiring him to make restitution in the amount of $92,111.

### B.

■ If an accused has been convicted of a Class C, D or E felony and sentenced as an especially mitigated offender or standard offender, there is a presumption that the accused is a favorable candidate for alternative

sentencing unless disqualified by some provision of the Tennessee Criminal Sentencing Reform Act of 1989. Tenn. Code Ann. § 40–35–102(6) (Supp.1994). Thus, the sentencing process must commence with a determination of whether the accused is entitled to the benefit of the presumption. *Ashby*, 823 S.W.2d at 169. As the Supreme Court said in *Ashby*: "If [the] determination is favorable to the defendant, the trial court *must* presume that he is subject to alternative sentencing. If the court is presented with evidence sufficient to overcome the presumption, then it may sentence the defendant to confinement according to the statutory provision[s]." 823 S.W.2d at 169 (emphasis added). The presumption may be successfully rebutted by facts contained in the presentence report, evidence presented by the state, the testimony of the accused or a defense witness, or any other source, provided it is made a part of the record.

In this case, the appellant was entitled to the presumption that he was a favorable candidate for alternative sentencing. The state acknowledged this fact and agreed that the appellant could be sentenced pursuant to the Tennessee Sentencing Corrections Act of 1985 as part of the plea bargain agreement.

### C.

 When sentencing an accused pursuant to the Tennessee Community Corrections Act of 1985, a trial court may release the accused into society immediately, order a designated period of straight incarceration, or order split confinement in the form of weekend sentencing. *See* Tenn. Code Ann. § 40–35–104(c) (Supp.1994). However, the sentence imposed must conform to the purposes of the Tennessee Criminal Sentencing Reform Act of 1989 as well as the sentencing considerations of the Act. Two factors are worthy of mention. First, "[t]he sentence imposed should be no greater than that deserved for the offense committed." Tenn. Code Ann. § 40–35–103(2) (1990). Second, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40–35–103(4) (1990).

 In this case, the parties agreed that the trial court would determine whether the appellant should serve a portion of his sentence in confinement. However, it was agreed that confinement, if ordered, would not exceed eleven months and twenty-nine days. The trial court ordered that the appellant should serve the entire eleven months and twenty-nine days in confinement. It was also agreed that the appellant would be granted work release if he was eligible for the program.

### D.

As previously mentioned, the appellant had been a model citizen in his community before the event in question. He has maintained the same work-related position for several years. He has been active in his church his entire life. His neighbors and friends, including ministers of churches he has attended, describe the appellant as an exceptionally fine man.

During the period when he committed this crime, the appellant was mentally ill. He was hospitalized for an extended period of time. He was still being seen on an outpatient basis by a psychiatrist. He is presently able to function in society by taking anti-depressant and anti-psychotic medications. The appellant has shown remorse for his transgression. When asked by his attorney if there was "anything that you think you need to say," the appellant stated: "Whatever works out the best for everybody is what I want."

Given the facts presented, this Court is of the opinion that the period of confinement should be limited to six (6) months. This confinement should be subject to the same terms and conditions set forth by the trial court and the entity administering the community corrections program. Therefore, the judgment of the trial court is amended to reflect that the period of confinement shall be six (6) months.

### II.

The appellant contends that the trial court abused its discretion in setting the amount of restitution. The trial court simply ordered the appellant to make restitution in the sum

of $92,111, which was the amount his wife had placed on a proof of loss provided by the insurance company insuring the residence and its contents.

In this jurisdiction, the trial court "may direct a defendant to make restitution to the victim of the offense as a condition of probation." Tenn. Code Ann. § 40–35–304(a) (1990). The amount of restitution that the defendant may be directed to pay is limited to "the victim's pecuniary loss." *See* Tenn. Code Ann. § 40–35–304(b) (1990). The phrase "pecuniary loss" includes:

> (1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant; and

> (2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expenses.

Tenn. Code Ann. § 40–35–304(e) (1990). There is no designated formula or method for the computation of restitution but the trial court is required to consider "the financial resources and future ability of the defendant to pay or perform." Tenn. Code Ann. § 40–35–304(d) (1990).

This Court concludes that the amount of restitution a defendant is ordered to pay must be based upon the victim's pecuniary loss and the financial condition and obligations of the defendant; and the amount ordered to be paid does not have to equal or mirror the victim's precise pecuniary loss. Moreover, the sum must be reasonable. Tenn. Code Ann. § 40–35–303(d)(10) (Supp. 1994); *State v. Michael Chastain*, Sumner County No. 88–222–III, 1989 WL 54902 (Tenn.Crim.App.), *per. app. denied*, (Tenn. 1989).

The only evidence regarding the amount of restitution that should be paid was offered by Mrs. Smith, the appellant's former wife. She provided the $92,111 figure to the insurance company that insured the residence and its contents. The proof of loss states that the residence was valued at $54,-

000. The damage to the residence amounted to $33,105. Mrs. Smith testified that some work had been performed on the residence, and the insurance company had paid the craftsmen for their services. The contents were valued at $60,000. The sum of $50,-446.47 was shown as the "actual amount of damage or loss". The insurance company agreed to pay $32,400 for the contents. The insurance company also agreed to pay $3,559.95 in incidental losses or expenses.

There is no explanation as to how these figures were calculated. It is possible that the values are accurate. It is also possible that the value attached to the contents are highly inflated. Moreover, it is impossible to determine the actual loss that Mrs. Smith will incur. It was not determined whether the contents were insured for their actual value.

The appellant testified that he is paid $7.00 per hour by his employer. His average take-home pay is $245. He pays $50 a week in child support. He was paying $100 towards his treatment and hospitalization shortly after he committed the crime. Of course, the appellant has other expenses as well. He must eat, have a place to sleep, transportation to and from work, clothing, as well as other related items of expense. These items were not taken into account by the trial court. In short, the appellant can not pay restitution of $92,111 based on his weekly pay.

This cause must be remanded to the trial court for a hearing on the question of restitution. The trial court must determine the actual loss, based on realistic values, the amount the appellant is paid, and the appellant's expenses that are reasonably incurred. The trial court must further set an amount of restitution that the appellant can reasonably pay within the time that he will be within the jurisdiction of the trial court.

If either party is dissatisfied with the decision of the trial court, the dissatisfied party may appeal as of right to this Court.

PEAY and TIPTON, JJ., concur.