IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 14, 2002

## STATE OF TENNESSEE v. DAVID D. BOTTOMS

**Appeal from the Criminal Court for Davidson County**
**No. 2000-B-607     Cheryl Blackburn, Judge**

---

**No. M2001-02693-CCA-R3-CD - Filed September 12, 2002**

---

The Appellant, David D. Bottoms, appeals from the Davidson County Criminal Court's order of restitution following his conviction for arson. On appeal, Bottoms argues the amount of restitution was excessive. Upon *de novo* review, we find that the victim did not provide sufficient evidence of his pecuniary loss for damages to the rental property. Accordingly, the amount of restitution as imposed by the trial court is modified, and the case is remanded for entry of a sentencing order in accordance with this opinion.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Modified and Remanded.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOE G. RILEY and NORMA MCGEE OGLE, JJ., joined.

Ross E. Alderman, District Public Defender; C. Dawn Deaner, Assistant Public Defender, Nashville, Tennessee, for the Appellant, David D. Bottoms.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Kathy D. Aslinger, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Roger D. Moore, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

On July 13, 2000, the Appellant pled guilty to arson, a class C felony. Pursuant to a negotiated plea agreement, the Appellant received a four-year sentence as a Range I standard offender. The manner of service and the amount of restitution was to be determined by the trial court. Following a hearing, the trial court ordered that the four-year sentence be served in confinement in the workhouse. Additionally, the Appellant was ordered to pay restitution in the amount of $10,000.00 to John Sneed Jones, Jr., the trustee for the owner of the rental property which

was damaged as a result of the arson. The Appellant appealed. This court affirmed the manner of service but remanded the issue of restitution for a new hearing, finding that the victim failed to provide sufficient evidence of his total loss. *State v. David D. Bottoms*, No. M2000-02080-CCA-R3-CD (Tenn. Crim. App. at Nashville, May 31, 2001). The relevant facts developed during the Appellant's first appeal are as follows:

> The defendant, a twenty-six-year-old high school dropout, was living in a rented house at 527 Raymond Street in Nashville with his girlfriend, Ashley Newby, and their child. . . . On January 12, 2000, he was, according to his testimony, "wasted," having started drinking at 7:00 a.m. He had argued during the day with Ms. Newby, and when he got home, she was at the home of a male friend, Jerry Hill. The defendant testified that "I wanted her to come home and she wouldn't come home." The defendant apparently called Hill's home and said that he was "going to catch the house on fire and lay in the middle of it." His first attempt at starting a fire in the front on [sic] the house was put out by other individuals. The defendant's second attempt, according to the testimony of James Watkins, an arson investigator with the Nashville Fire Department, involved the deliberate use of an accelerant. This second attempt resulted in significant fire damage to the house. . . .

> Following the hearing in this matter, and testimony from both the victim and the defendant, the trial court concluded that restitution should be calculated from the $28,000 which the victim expended in repairs plus $1725 in lost rent while the house was being repaired. The judgment form contains the following language as "special conditions": "Victim had $28,000 in repairs to property which was not insured; lost approximately $1725 in rent for months house being repaired. Total restitution."

> However, the trial court then concluded that, given the defendant's circumstances, he would not be able to pay this amount. Accordingly, the trial court orally ordered that the defendant pay $10,000 in restitution following his release from confinement.

*Id.* (footnotes omitted). This court then went on to conclude that Jones failed to provide sufficient evidence of his total loss based upon the following rationale:

> First, we examine the pecuniary loss substantiated by the record. The presentence report contains the following single comment concerning restitution: "The victim, John S. Jones, Sr., stated that he has an estimate for $28,000.00 for repairs to his property." The victim testified at the sentencing hearing concerning his losses, stating that he had completed many of the repairs himself. Three items were submitted as evidence concerning the victim's pecuniary losses: (1) a photocopy of an estimate of $28,600 for repairs to the house at 527 Raymond Street, prepared by Jack Crisp, owner of Complete Repair and Service dated January 17, 2000; (2) a photocopy of an invoice in the amount of $3448, and showing a balance owed of

$2648, for repairs completed by Jack Crisp on the house at 527 Raymond Street; and (3) photocopies of nineteen photographs of the house at 527 Raymond Street taken by arson investigator James Watkins. Mr. Jones testified that although he had several other bills which he had paid for repairs and invoices for materials used, he did not bring these to the hearing.

We note that the State's proof appeared to be conflicting as to the degree to which the structure was damaged. James Watkins, an arson investigator with the Nashville Fire Department, agreed that the damage was concentrated at the back of the house and that there was "basically minor" damage to the living room. The victim testified that "many would consider [the house] to be [a total loss]," but he repaired it. When questioned by the trial court about the accuracy of the $28,000 figure, and whether it was "pretty much accurate" as to what he had to spend for repairs, the victim said that it was "relatively accurate." The victim testified that he did much of the repair work himself. He did not explain whether his efforts were in addition to the approximately $28,000 which he expended. . . .

The trial court calculated lost rent for three months based on rent in the amount of $575 per month. The victim did not recall exactly when he had been able to rent the damaged house but agreed that "at least by the first of April, I'm sure it was occupied." As to the list of items included in the $3448 statement from Jack Crisp for work completed as of March 20, 2000, that is, just prior to a new renter's taking occupancy, it is unclear whether all of these repairs were done as a result of fire damage to the structure. . . .

Based upon our review of the testimony of the victim's fire loss, we conclude that the evidence presented was insufficient to establish that the victim's repair cost was $28,000, which the victim said was only "relatively accurate." Although the victim said that he had other invoices showing payments for repairs, he brought only one paid invoice to the hearing. A victim seeking restitution must present sufficient proof so that a trial court can determine with some reliability the amount of the loss. Because of the uncertainty as to the victim's loss, and the additional considerations in setting the total restitution amount, we cannot conclude that the defendant should be ordered to pay restitution in the amount of $10,000. Accordingly, we remand to the trial court for reconsideration as to the victim's total loss, as well as the court's order that the defendant pay the sum of $10,000 as restitution. This amount appears to be excessive, given the time frame within which payment must be made and the defendant's limited income. Since unpaid restitution can be reduced to a civil judgment, an order should be entered setting out the amount of restitution which is to be paid.

*Id.* (footnotes omitted). Upon remand, the trial court determined that Jones suffered an actual loss of $22,541.01 and again found the appropriate amount of restitution to be $10,000.00. This timely appeal followed.

## ANALYSIS

The Appellant again argues that the trial court imposed an excessive amount of restitution. Specifically, he contends that the proof was insufficient to show Jones suffered a pecuniary loss of $22,541.01, or even that he suffered a loss of $10,000.00. When an appellant challenges a trial court's restitution order, this court conducts a *de novo* review with a presumption the trial court's determinations are correct. *See* Tenn. Code Ann. § 40-35-401(d) (1997); *State v. Johnson*, 968 S.W.2d 883, 884 (Tenn. Crim. App. 1997). A trial court, in conjunction with a sentence of total confinement, may order a defendant to make restitution to the victims of the offense. *See* Tenn. Code Ann. § 40-35-104(c)(2) (1997). "The purpose of restitution is not only to compensate the victim but also to punish and rehabilitate the guilty." *Johnson*, 968 S.W.2d at 885 (citation omitted). The standards set forth in Tennessee Code Annotated § 40-35-304, which govern restitution in conjunction with probation, are applicable to restitution issues in cases involving total confinement. Tenn. Code Ann. § 40-35-304(g) (2001). The statute indicates that the amount of restitution should be based on a victim's pecuniary loss. *See* Tenn. Code Ann. § 40-35-304(b). Pecuniary loss includes:

> (1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant; and
>
> (2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expense.

Tenn. Code Ann. § 40-35-304(e). Additionally, "the amount ordered to be paid does not have to equal or mirror the victim's precise pecuniary loss." *State v. Smith*, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994), *perm. to appeal denied*, (Tenn. 1995). In determining the appropriate amount of restitution, a trial court must ascertain both the amount of the victim's loss and the amount which the defendant can reasonably be expected to pay. *Id.; see also* Tenn. Code Ann. § 40-35-304(d).

We proceed to examine the pecuniary loss corroborated by the record. Upon remand, Jones testified that he did a "great deal" of the repair work himself and that he expended $22,541.01 to repair the rental property after the fire. This amount was

> an estimate of the total materials used, both from inventory and new purchases, of all labor required for the installation, to rebuild including the big clean-up job consisting of various quantities of lumber, drywall, carpet, electrical supplies, plumbing repairs,

> hardware, other miscellaneous supplies used to rebuild the house after the clean-up
> of the fire that we estimate damaged 60% of the structure.

Jones did not produce any documents or receipts regarding this estimate other than a piece of yellow legal pad paper which he had prepared setting forth the above estimate and explanation.[1] He further testified that he arrived at this figure by estimating the quantities of materials and supplies used and then priced those items at Home Depot. The only documentation of actual expenditures for fire damage was $3448.00 paid to Jack Crisp, owner of Complete Repair and Service, for repairs to the property.[2] This estimate did not include lost rental income during the time repairs were being made to the property, which amounted to $1,725.00.[3] Also introduced into evidence was a photocopy of an estimate of $28,600.00 for repairs to the rental property prepared by Crisp, dated January 17, 2000. The Appellant submitted the only new item into evidence upon remand, a document outlining his present financial situation.

In this case, we again find that the evidence presented was insufficient to establish that Jones' repair costs were $22,541.01. The evidence at the second hearing was no better than the first. During the first hearing, Jones testified that he had other documents showing payments for repairs, and he was specifically informed to bring all documents reflecting such with him to the second hearing. He failed to do so. At the first hearing, Jones testified that he spent $28,600.00 to repair the property. At the time of this testimony, he stated that the repairs had been completed and the house had been rented. At the second hearing, Jones did not sufficiently explain why his first estimate was more than the present estimate, $22,541.01. Furthermore, the State never clarified the conflicting proof as to the degree to which the structure was damaged. This case was remanded specifically for the purpose of Jones providing additional evidence of his pecuniary loss. The evidence produced at the second hearing does not comply with this order. Accordingly, we adopt the Appellant's argument and find that the appropriate amount of restitution is $5,213.00, which

---

[1] Prior to the hearing, the State sent a letter to Jones requesting him to bring all documents he had concerning the restitution amount with him to the hearing. At the hearing, Jones testified that he "found it futile to bring all this in." He also testified that he brought a "quantity" of documents with him to the hearing, but these documents were not produced.

[2] Jones testified that most of the work Crisp performed on the house was included in this amount. The State introduced into evidence a photocopy, also introduced at the first hearing, of an invoice in the amount of $3,448.00, and showing a balance owed of $2,648.00, for repairs completed by Crisp. This court on the Appellant's first appeal expressed concern whether some of the repairs listed in this invoice were done as a result of the fire damage to the structure. Upon remand, the trial court found that the Appellant had sufficiently explained that these repairs were related to the fire damage. The Appellant concedes this on appeal. Accordingly, we find it unnecessary to review this issue.

[3] The Appellant argues that the lost rental income should only be for the months of February and March. The Appellant did not pay any rent for the month of January. He contends that January should not be included in the amount of restitution because the fire occurred on January 12, 2000, and ,thus, lost rent for the month of January was not related to the fire. We find that January should be included in the amount of restitution as the Appellant should not be exempted from payment resulting from his own misdeed.

includes the lost rental income and the $3,448.00 invoice prepared by Crisp, as this is the only evidence which we find substantiated by the record.

## CONCLUSION

Based upon the foregoing, we conclude that the evidence presented was insufficient to establish a pecuniary loss of $22,541.01. Accordingly, the amount of restitution as imposed by the trial court, of $10,000.00, is vacated and reduced to $5,213.00. The case is remanded to the trial court for modification of the amount of restitution in accordance with this opinion.

_____
DAVID G. HAYES, JUDGE