IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 17, 2020 Session

**STATE OF TENNESSEE v. JACK EDWARD THOMAS**

**Appeal from the Criminal Court for McMinn County**
**No. 19-CR-12     Sandra N. C. Donaghy, Judge**

_____

**No. E2020-00044-CCA-R3-CD**

_____

The Defendant, Jack Edward Thomas, pled guilty to arson and received a five-year sentence, with one year of incarceration to be followed by four years of probation. Following a hearing, the trial court ordered restitution in the amount of $4,320, with the Defendant to make installment payments of $90 per month. The Defendant appeals the restitution award, arguing that the State failed to present sufficient evidence of the victim's pecuniary loss because the victim's testimony was uncertain and unreliable. The Defendant also asserts that the judgment form erroneously reflects a restitution award of $7,000, which was the victim's total pecuniary loss as determined by the trial court, because it exceeded the total amount the trial court found that the Defendant was able to pay in $90 per month installments for four years ($4,320). After reviewing the record, we conclude that the State introduced inadequate proof regarding the valuation of the loss. Accordingly, we reverse and remand for a new restitution hearing. The Defendant's alternative argument regarding correction of the judgment form is rendered moot, though it does have merit.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;**
**Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Brennan M. Wingerter, Appellate Director, District Public Defenders Conference (on appeal); and C. Richard Hughes, Jr., District Public Defender, and Timothy W. Wilson, Assistant Public Defender (at sentencing), for the appellant, Jack Edward Thomas.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Senior Assistant Attorney General; Stephen D. Crump, District Attorney General; and Clay Collins, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION
## FACTUAL BACKGROUND

On September 30, 2019, the Defendant entered a best interest guilty plea to one count of arson, a Class C felony. See Tenn. Code Ann. § 39-14-301. In exchange for his plea, the Defendant received an agreed-upon sentence of five years, with four years to be served on supervised probation after service of one year in jail; the State also agreed to "no bill" a charge pending before the grand jury against the Defendant for introduction of contraband into a penal institution. The parties further agreed that the issue of restitution would be decided by the trial court after a hearing. In addition, the Defendant, at the guilty plea hearing, expressly waived preparation of a presentence report.

The factual basis articulated by the State at the guilty plea hearing indicated that on October 17, 2018, the Defendant went into Charles Spurling's trailer to collect some belongings of the Defendant's recently deceased father; the Defendant's father had rented the trailer from Mr. Spurling. When the Defendant arrived at the trailer, however, he realized that someone had already removed or stolen many of his father's belongings. Upon discovering this, the Defendant "got very upset" and used a lighter to ignite clothing in the trailer. The Defendant's mother, Mr. Robert Fritts, and Ms. Jessica Croft were all present when the trailer was set on fire; Ms. Croft identified the Defendant as the perpetrator. The trailer was "damaged significantly" from the fire.

Thereafter, a restitution hearing was held on December 9, 2019. The State's proof consisted of Mr. Spurling's testimony. According to Mr. Spurling, he bought the three-bedroom two-bath trailer about eight years ago for approximately $4,800; however, he indicated that he got the trailer at a low price because it "needed some siding work." He said that he spent an additional $1,500 for siding materials and $500 on labor to install the siding. In addition, Mr. Spurling testified that about five or six years ago, he and his "crew" built a "12-by-24 front porch" onto the trailer. Mr. Spurling estimated that he "spent about $4,000, . . . counting the labor and all," constructing the porch.

Mr. Spurling affirmed that he had been renting the trailer to the Defendant's father at $250 per month for the last five or six years. When asked if he thought he would have been able to rent the trailer again after the Defendant's father passed away, and but for its being burned, Mr. Spurling responded that he "already had somebody [who] wanted it." In addition, when asked to estimate the value of the trailer at the time it was burned, Mr. Spurling said, "To me [the trailer] was worth $10,000 dollars."

On cross-examination, Mr. Spurling stated that he had the following additional expenses after purchasing the trailer: "$2,000 dollars to get it moved. $2,000 dollars to get it set up." When asked about the condition of the trailer's front porch at the time it was burned, Mr. Spurling admitted that he did not know what condition the porch was in at the

time because he had not been on the property or seen the trailer "probably in three years" prior to its burning. Mr. Spurling testified that the "last time" he was there, the porch was "in good shape."

Mr. Spurling acknowledged telling a detective on the day the trailer was burned that he estimated the trailer's worth at $4,000; Mr. Spurling explained that at the time he told the detective such, he "was upset and wasn't thinking straight" and that he had failed to take into consideration improvements to the trailer like the front porch. Mr. Spurling also admitted that during the pendency of this case, he had told the District Attorney's Office that the trailer was worth $7,000, but Mr. Spurling insisted that $10,000 was a more accurate estimate because he had done some "more figuring."

Mr. Spurling did not have any insurance on the trailer; however, Mr. Spurling said that the Defendant's father was supposed to have carried a renter's policy according to their verbal agreement. Mr. Spurling explained, "Well, it's almost impossible to get insurance on just the trailer."

Relative to ownership of the appliances in the trailer, Mr. Spurling indicated that he had bought some of them and that the Defendant's father had provided some himself. Specifically, Mr. Spurling said that he had bought a stove, a refrigerator, and a deep freezer for the trailer "in the last couple of years." As a final remark, Mr. Spurling confirmed that he had obtained a $13,000 personal loan by offering the trailer as collateral.

The Defendant then presented his proof. According to the Defendant, his father had rented the now-burned trailer as his residence for at least "six or eight years," and possibly as long as "ten or eleven years." The Defendant, as well as the Defendant's mother and uncle, had lived in the trailer with the Defendant's father during various periods. The Defendant indicated that his father had moved out of the trailer sometime in 2018 because his father was in bad health, as well as due to the issues with the trailer that Mr. Spurling would not fix, such as the septic tank's overflowing, "busted" water pipes, and the dilapidated condition of the porch. Though the Defendant's father moved out of the trailer and moved in with the Defendant, his uncle remained living there. The Defendant's father passed away in September 2018, and at some point thereafter, the Defendant's uncle moved out of the trailer as well.

The Defendant testified that over the years, he had purchased and installed several appliances in the trailer. The Defendant indicated that he made four purchases of appliances that "ended up being used" in the trailer. The Defendant produced four receipts evidencing his purchases—$235 on a water heater, $436 on a refrigerator, $300 on a washer and dryer set, and $300 on a stove and dishwasher. According to the Defendant, these appliances, to the best of his knowledge, were still present in the trailer at the time it was burned.

- 3 -

The Defendant confirmed that he was inside the trailer on the day it burned. He stated that the trailer's porch was so deteriorated at that time that it was impossible to enter or exit on the porch side because the porch's roof was blocking the door. According to the Defendant, the porch was added to the trailer about ten years ago. Though the porch was in decent shape when it was built, it was sort of a "cobbled up" job and "wasn't exactly professionally built," in the Defendant's opinion. As for the inside of the trailer, the Defendant said that it looked "like somebody [had] run through it with a bobcat." He saw "holes in the walls," "windows that were knocked out," and pieces of dressers lying in the floor, making it impossible to walk through.

When asked about his employment status, the Defendant testified that he suffered from cerebral palsy and had been on disability "[p]retty much all [his] life." His only income was a monthly disability check for $771. The Defendant stated that he would be living on "[his] property" with his mother and daughter once released. According to the Defendant, as far as his monthly bills, he had a $400 trailer payment, about $200 in utilities, and a loan payment of somewhere between $100 and $200. He asserted that his monthly expenses "[ate] up just about all of" his monthly disability check, and he estimated that he had approximately $90 left each month after expenses.

Timothy Lankford, who had been acquainted with the Defendant for twenty years or more, testified that he had been to the trailer "many times" to visit the Defendant and the Defendant's father. Mr. Lankford said that he had last seen the trailer "[a]round the end of July" 2018, which was about three months before it burned. Mr. Lankford described the condition of the trailer at that time: "[T]here w[ere] holes all in the walls, and roaches crawling everywhere—rats[,] drop cords running all over the floor; the septic tank outside didn't have [a] cover on it, or [any]thing." According to Mr. Lankford, he could not even let his daughter go outside and play on that occasion because he "was afraid she might fall into the septic tank." Relative to the condition of the front porch, Mr. Lankford said that it was not "attached to the trailer" and was "ready to fall down."

Mr. Lankford confirmed that he and his fiancée had sold several appliances to the Defendant, including a washer and dryer for $150 apiece, a stove, and a dishwasher. Mr. Lankford further testified that he had either seen the appliances installed in the trailer or had helped to install some of them.

Linda Carnahan, the Defendant's mother, confirmed that she was there the day the trailer burned, and she described the condition of the trailer at that time. Ms. Carnahan testified that the front porch "had f[allen] in" and that "the door steps were gone," which made it was impossible to enter or exit the trailer from the porch side. The back side of the trailer, the only usable entrance, "was barely hanging on," according to Ms. Carnahan. As for the inside of the trailer, Ms. Carnahan recalled that "[a]ll the [electrical] receptacles were hanging out the wall."

Ms. Carnahan said that she lived in the trailer with the Defendant's father about ten years prior. At that time, "the oven on the stove" did not work, so she could not cook Thanksgiving dinner. The front porch had not been added then. According to Ms. Carnahan, even when the front porch was first built, it had "knots" in the wood, and when someone stepped on the knots, "the knots fell through and left holes."

Sidney Smith testified that he had known the Defendant's father, and consequently the Defendant, for thirty years or more. He frequented the trailer and sometimes mowed the yard at no charge to the Defendant's father, who was not in good health and could not afford to pay for yard service. Mr. Smith, who had last mowed the yard in June 2018, described the overall condition of the trailer as "[v]ery poor." Mr. Smith confirmed that the porch was in "bad shape" and that the porch roof had collapsed, making it impossible to use the front door.

Relative to the inside condition of the trailer, Mr. Smith said that it was likewise "[v]ery, very bad." He testified that none of the electrical receptacles worked inside the trailer, meaning that the Defendant's father had to operate his oxygen machines and lamps "off of drop cords" running from the meter outside. When Mr. Smith asked the Defendant's father why he continued to live there, the Defendant's father replied that he could not afford to live elsewhere. Mr. Smith further stated that as he attempted to leave the trailer that day, he put his hand on the trailer's wall, which was warm to the touch and very concerning. According to Mr. Smith, the Defendant's father indicated that he had tried to have Mr. Spurling come fix this issue, but his efforts were to no avail.

At the conclusion of the proof, the trial court first recounted Mr. Spurling's testimony and determined that Mr. Spurling's total "expenses" for the trailer were $14,800, which included the purchase price ($4,800), the cost to move and set up the trailer ($4,000), the cost of the porch ($4,000), and the cost of the siding and labor ($2,000). The trial court noted that Mr. Spurling estimated the trailer's worth at $10,000 at the time of the fire even though Mr. Spurling had not been to the trailer in three years and that a victim may testify regarding his property's value. The trial court then recounted the testimony of the defense witnesses, who had seen the trailer more recently, about the deteriorated condition of the trailer before it was burned. The trial court noted that although the Defendant had purchased appliances that were inside the trailer at the time it was burned, the Defendant would only owe the money for their value to himself. The trial court then remarked, "Property depreciates with age. Property that is not properly maintained depreciates at a faster rate than property that is maintained, but nobody has given me any facts on which to draw any of those conclusions."

Observing that Mr. Spurling had given conflicting statements about the trailer's value, the trial court commented that at the time of the fire, Mr. Spurling told the detective that the trailer was worth $4,000, though Mr. Spurling had attempted to explain how he

came up with that estimate, his being upset and that he had not taken into consideration any improvements to the trailer. The trial court further commented that Mr. Spurling, at some point during the pendency of this case, had told the District Attorney's Office that the trailer was worth $7,000. The trial court acknowledged that Mr. Spurling himself had provided values between $4,000 and $10,000.

Next, the trial court commented, "All of [the defense] witnesses speak to the terrible condition of the property, but nobody has provided me any photographs, or statements, or comparable listings that would allow me to attribute a factual basis to the poor condition." The trial court remarked that "very limited facts" had been presented for the court's consideration. The trial court then determined that Mr. Spurling's pecuniary loss was $7,000, "tak[ing] Mr. Spurling's three estimates of value and averag[ing] them. So $4,000 plus $7,000; plus $10,000, divided by three is $7,000."

Next, the trial court examined the Defendant's financial resources and ability to pay. The trial court indicated that the Defendant had "not given very finite information as to his expenses." The trial court also reviewed the affidavit of indigency in the record. The trial court noted that the Defendant stated in the affidavit that he owned property valued at $9,500 and that he had expenses for health insurance and food, but that he did not indicate any payments for rent or utilities. The trial court described the affidavit as "woefully inadequate" and then recounted the Defendant's testimony that he received a monthly disability check of $771 and had about $90 remaining each month after expenses. Finding that the Defendant could pay his $90 left each month towards restitution, the trial court multiplied the monthly payment obligation of $90 by the number of months in the Defendant's four-year probationary term (forty-eight), and set a total restitution award of $4,320.

Following the hearing, an amended judgment form[1] was entered that same day to add the restitution order. The December 9, 2019 amended judgment form provided for a total restitution amount of $7,000 (Mr. Spurling's total pecuniary loss) and a payment schedule of $90 per month.[2] Thereafter, the Defendant filed a timely notice of appeal on January 9, 2020.[3]

---

[1] The trial court first entered a judgment form on November 12, 2019.

[2] The December 9, 2019 amended judgment form erroneously increased the Defendant's sentence from five years to six years, as well as increasing his corresponding probationary term from four years to five years. Thereafter, the trial court entered a corrected judgment form on May 22, 2020, which reflected the proper agreed-upon sentence and the same restitution amount of $7,000 with a $90 per month payment schedule.

[3] The Defendant's notice of appeal complies with Tennessee Rule of Appellate Procedure 20(a). It was sent to the clerk's office by certified return receipt mail on January 7, 2020, which was within the time fixed for filing.

ANALYSIS

On appeal, the Defendant argues that the trial court's restitution award should be reversed because the State did not present any documentation or reliable testimony to show the pecuniary loss of Mr. Spurling's dilapidated trailer and that this court should order a restitution amount of $0. Alternatively, the Defendant argues that the trial court's order of $7,000 restitution in the judgment form should be corrected because, while it was the amount the trial court determined to be Mr. Spurling's total pecuniary loss, it was not the amount the trial court found that the Defendant was able to pay in $90 per month installments for four years ($4,320).

The States responds that the trial court acted within its broad discretion by ordering monthly restitution payments limited to Mr. Spurling's pecuniary loss and equaling what the Defendant could pay within the duration of his sentence. Responding to the Defendant's alternative argument, the State acknowledges that the judgment form erroneously reflects a restitution amount of $7,000 and that it should be amended to reflect the proper amount of $4,320.

A trial court, in conjunction with a probated sentence, may order a defendant to make restitution to the victims of the offense. See Tenn. Code Ann. § 40-35-304(a). The amount is determined based on "the nature and amount of the victim's pecuniary loss." Tenn. Code Ann. § 40-35-304(b). "Pecuniary loss," in the context of this section, means "[a]ll special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant" and "[r]easonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense[.]" Tenn. Code Ann. § 40-35-304(e)(1)-(2). However, the restitution award "does not have to equal or mirror the victim's precise pecuniary loss." State v. Smith, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994); see State v. Mathes, 114 S.W.3d 915, 919 (Tenn. 2003).

The sentencing court must consider not only the victim's loss but also the financial resources and future ability of a defendant to pay. Tenn. Code Ann. § 40-35-304(d); State v. Bottoms, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001). In ordering restitution, the trial court shall specify the amount of time for payment and may permit payment or performance of restitution in installments. Tenn. Code Ann. § 40-35-304(c). The court may not, however, establish a payment or schedule extending beyond the expiration of the sentence. Tenn. Code Ann. § 40-35-304(g)(2). Further, upon expiration of the time of payment or the payment schedule imposed, any unpaid portion of the restitution may be converted to a civil judgment. Tenn. Code Ann. § 40-35-304(h)(1); Bottoms, 87 S.W.3d at 108.

This court has held that we review a trial court's restitution order for an abuse of discretion, granting a presumption of reasonableness to within range sentences reflecting a proper application of the purposes and principles of the Sentencing Act. State v. David Allen Bohanon, No. M2012-02366-CCA-R3-CD, 2013 WL 5777254, at *5 (Tenn. Crim. App. Oct. 25, 2013) (relying on State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012), and State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012)); see also Tenn. Code Ann. § 40-35-104(c)(2) (providing that restitution is authorized by the statute governing alternative sentences). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010). While there is no set formula for determining restitution, State v. Johnson, 968 S.W.2d 883, 886 (Tenn. Crim. App. 1997), above all, the restitution amount must be reasonable. Smith, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994).

The Defendant initially argues that the testimony from Mr. Spurling about his pecuniary loss was uncertain and unreliable, noting (1) that Mr. Spurling provided a wide range of estimates regarding the trailer's value, anywhere between $4,000 and $10,000; (2) that Mr. Spurling could not testify as to the condition of the trailer at the time it was burned because he had not been there in three years; and (3) that the defense witnesses provided testimony about the deteriorated condition of the trailer. According to the Defendant, "the State failed entirely in its duty to present documentation of the nature and amount of Mr. Spurling's pecuniary loss[,]" and the burden of proof was improperly shifted to the Defendant, his being faulted by the trial court "for not providing photographs of the trailer to show its condition before and after it burned." The Defendant concludes that "the trial court's restitution order must be reversed because the court set the total amount of $7,000 based on an arbitrary average of the various, contradictory amounts of loss claimed by the property owner[.]" The Defendant asks this court to set the restitution amount at $0.

The State responds that substantial evidence establishes Mr. Spurling's pecuniary loss of at least $4,320, arguing that Mr. Spurling gave consistent testimony at the restitution hearing that the trailer was worth $10,000, though he admitted giving prior inconsistent statements that did not account for the improvements to the trailer; the State also notes that the lowest estimate provided by Mr. Spurling was $4,000, "merely $320 shy of the total restitution payments ordered." According to the State, based on Mr. Spurling's testimony about the trailer's size, amenities, purchase price, improvement investments, rent potential, and value as loan collateral, "a reasonable mind could agree with the trial court's conclusion that [the D]efendant caused a pecuniary loss of $7,000 by burning down the trailer." The State continues, "[M]ore to the point, a reasonable mind could easily agree that [the D]efendant caused a pecuniary loss of at least $4,320—the total of restitution payments ordered by the trial court—by burning down the trailer."

Pecuniary loss must be substantiated by the evidence in the record or agreed to by the defendant. Tenn. Code Ann. § 40-35-304(e)(1); David Allan Bohanon, 2013 WL 5777254, at *6. Because an order of restitution may be converted to a civil judgment, the burden of proof may not fall far below that required in a civil suit in order to prevent criminal courts from becoming "a haven for 'victims' who think their losses might not meet the level of proof necessary to recover in a civil case." Bottoms, 87 S.W.3d at 108 (quoting State v. Larry Lee McKinney, No. 03C01-9309-CR-00307, 1994 WL 592042, at *4 (Tenn. Crim. App. Oct. 26, 1994)). The victim must present sufficient evidence to allow the trial court to make a reasonable determination of loss. Bottoms, 87 S.W.3d at 108. "While a victim's testimony alone may be sufficient to establish special damages for purposes of restitution, general statements regarding the amount of loss without explanation as to how the value was determined are insufficient." David Allan Bohanon, 2013 WL 5777254, at *7; see State v. Jerry Lee Truette, No. M2005-00927-CCA-R3-CD, 2006 WL 2000540, at *3 (Tenn. Crim. App. July 19, 2006) (quoting State v. Charles R. Turner, No. M2003-02064-CCA-R3-CD, 2004 WL 2775485, at *8 (Tenn. Crim. App. Dec. 1, 2004)). Documentation supporting testimony regarding loss is "helpful." State v. Jennifer Murray Jewell, No. M2015-02141-CCA-R3-CD, 2017 WL 65242, at *8 (Tenn. Crim. App. Jan. 6, 2017) (citing State v. Tarojee M. Reid, No. M2014-01681-CCA-R3-CD, 2015 WL 3989127, at *3 (Tenn. Crim. App. June 30, 2015) (quoting State v. Wendell Gary Gibson, No. M2001-01430-CCA-R3-CD, 2002 WL 1358711, at *2 (Tenn. Crim. App. June 24, 2002))). Furthermore, an order of restitution may not be based on arbitrary estimates. Jerry Lee Truette, 2006 WL 2000540, at *4.

In his initial brief, the Defendant, in making his argument that Mr. Spurling's testimony is unreliable and unsupported by documentation, cites to the subsection of the restitution statute that requires documentation in the presentence report to substantiate the nature and amount of loss to the victim. That subsection reads, "Whenever the court believes that restitution may be proper or the victim of the offense or the district attorney general requests, the court shall order the presentence service officer to include in the presentence report documentation regarding the nature and amount of the victim's pecuniary loss." Tenn. Code Ann. § 40-35-304(b). Insofar as the Defendant's argument can be read as an objection to the lack of documentation in the presentence report, we agree with the State that the Defendant cannot now claim error when he affirmatively waived preparation of the pre-sentence report at the guilty plea hearing. See Tenn. R. App. P. 36(a) (providing that "[n]othing . . . shall be construed as requiring relief [to] be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"). Moreover, in his reply brief and during oral argument, the Defendant seemingly changed course, emphasizing merely a lack of documentation by Mr. Spurling at the restitution hearing, and not an affirmation that documentation in the presentence report was required to support a restitution award. Finally, this court has consistently held that any error in technical noncompliance with the

documentation requirement of the restitution statute is harmless when the defendant has the opportunity to respond to and contest any documentation and when the defendant is given "full consideration under the law regarding restitution." State v. Moore, 814 S.W.2d 381, 384 (Tenn. Crim. App. 1991); see Jennifer Murray Jewell, 2017 WL 65242, at *8. As noted above, documentation supporting testimony regarding loss is "helpful," but such is not required. See Jennifer Murray Jewell, 2017 WL 65242 at *8; Tarojee M. Reid, 2015 WL 3989127, at *3.

Relative to whether the State presented sufficient evidence of Mr. Spurling's pecuniary loss, we find guidance in State v. Jennifer Murray Jewell. In that case, the defendant, who served as an office manager, pled guilty to one count of theft of property against her employer, and the State presented testimony from two of the victim's employees regarding the approximate amounts of loss. Jennifer Murray Jewell, 2017 WL 65242, at *1, *9. The trial court subsequently determined that the amount of the victim's loss was $372,000 and imposed a restitution award of $100,000. Id. at *4. This court held that "origin of" the figure for the victim's total loss was "completely unclear given the more specific testimony regarding categories of loss." Id. at *9. This court, utilizing the abuse of discretion standard of Bise, concluded that there was an inadequate explanation as to how this figure was calculated and that the trial court could not have reliably found the amount of the loss. Id. at *9-10. We reversed and remanded for a new hearing and a new determination regarding the value of the loss despite acknowledging that a restitution amount of $100,000 was far below the claimed value of the loss at $372,000. Id. at *10. In rendering its decision, the Jewell court also relied upon the cases which follow. Id. at *8-9.

In State v. David Allan Bohanon, two victims testified to their losses by theft. While the victims' testimony regarding specific stolen items, accompanied by the victims' estimation of the value of the items, was held to be sufficient evidence to uphold the restitution award, this court concluded that the testimony of one victim that he was missing tools valued at $10,000 was insufficient to sustain the award as to that loss. David Allan Bohanon, 2013 WL 5777254, at *7. Applying the Bise abuse of discretion standard, this court reversed the award regarding the $10,000 in tools, noting that the victim had at first testified the tools were worth $50,000 and that he provided no specific evidence regarding which tools were missing, merely stating that they were "expensive" and "everything a mechanic would need." Id. We concluded that this testimony was insufficient to allow the trial court to make a reasonable or reliable determination of value regarding these items. Id. Ultimately, a new restitution hearing was ordered. Id. at *8.

In State v. Bottoms, this court, applying the appropriate de novo standard of review at that time, likewise found the amount of restitution unsubstantiated. 87 S.W.3d at 108. The victim in Bottoms testified that he completed repairs after an arson at this rental house

and that $28,000 was a "relatively" accurate assessment of the cost. Id. at 107. He provided an estimate from a contractor for approximately $28,600 worth of repairs, but only provided an invoice for approximately $6,096 of repairs and testified that he had completed many repairs himself and had not brought his other bills. Id. This court concluded that the victim's actual loss was "uncertain[]" and that the trial court could not determine the loss with reliability. Id. at 109. Like in Jennifer Murray Jewell, this court, despite the fact that the $10,000 restitution award had been set far below the claimed value of the loss of $28,000, reversed and remanded for a new hearing and determination of the value of the loss. Id.

In State v. Smith, this court concluded that the estimates of the arson victim's loss regarding value and damages were not adequately proven. 898 S.W.2d at 747 (also conducting de novo review). While the victim provided an estimate regarding the value of the destroyed residence, the value of its contents, the amount of damages, and the amount that the insurance company paid, the victim did not provide an "explanation as to how these figures were calculated," and there was a possibility that the values were "highly inflated." Id. We remanded for a new restitution hearing for the trial court to "determine the actual loss, based on realistic values, the amount the [defendant was] paid, and the [defendant's] expenses that [were] reasonably incurred." Id.

In line with these cases, we agree with the Defendant that there was insufficient evidence presented to establish the pecuniary loss to Mr. Spurling at the time the trailer was burned. Mr. Spurling testified that he bought the three-bedroom two-bath trailer about eight years earlier for approximately $4,800. Relative to the trailer's value at the time of the fire, Mr. Spurling gave widely varying estimates, providing three different estimates of $4,000, $7,000, and $10,000. At the restitution hearing, Mr. Spurling insisted that $10,000 was a more accurate estimate because he had done some "more figuring." Ultimately, the trial court credited Mr. Spurling's testimony that his initial figures did not include the improvements to the trailer that Mr. Spurling had performed over the years, and then, with little further explanation, the trial court took Mr. Spurling's three estimates and averaged them to determine Mr. Spurling's total pecuniary loss, arriving at the $7,000 figure.

The trial court itself remarked that "very limited facts" had been presented for the court's consideration to properly determine the pecuniary loss to Mr. Spurling. As stated above, an order of restitution may not be based on arbitrary estimates. Jerry Lee Truette, 2006 WL 2000540, at *4. Moreover, a victim's testimony regarding the amount for which the property was purchased years ago was also held to be insufficient to sustain the award of restitution because the value at the time of the offense was not established. State v. John Edward Lewis, No. M2014-01912-CCA-R3-CD, 2015 WL 3541424, at *3 (Tenn. Crim. App. June 5, 2015).

- 11 -

In addition, the trial court noted that "[p]roperty depreciate[d] with age" and that property not "properly maintained depreciate[d] at a faster rate." The trial court then stated that "nobody ha[d] given . . . any facts on which to draw any of those conclusions" regarding depreciation of the trailer, as well as commenting, "All of these witnesses speak to the terrible condition of the property, but nobody has provided me any photographs, or statements, or comparable listings that would allow me to attribute a factual basis to the poor condition." The Defendant correctly observes that as the victim of the arson, it was Mr. Spurling's responsibility to provide sufficient facts about his property for the trial court to make a reasonable determination about the amount of pecuniary loss, not the Defendant's. See Bottoms, 87 S.W.3d at 108.

Most importantly, while the value of property can be established through the victim's testimony alone, Mr. Spurling admitted that he had not seen the trailer in three years and had no idea what condition it was in at the time it burned. Therefore, Mr. Spurling's estimates could not have been based upon the value of the trailer at the time of the offense. See Lewis, 2015 WL 3541424, at *3. The only testimony of the condition of the trailer at the time of the fire came from the defense witnesses, who testified consistently with each other about the very poor condition of the trailer and the porch. Accordingly, we conclude that Mr. Spurling's testimony regarding his actual loss at the time of the offense was uncertain and that the trial court could not determine the loss with reliability.

The question of the appropriate remedy remains. This case is strikingly similar to John Edward Lewis. There, the defendant was convicted of vandalism of property, a mobile home. On appeal, this court found that the only proof presented at the sentencing hearing "as to the value of the damaged property was the amount [the victim] paid to purchase the property in 2008" and that "[n]o evidence was presented as to the value of the mobile home at the time of the offense or as to the cost to repair the home." John Edward Lewis, 2015 WL 3541424, at *3. Because there was no proof in the record evidencing the value of the victim's mobile home at the time of the offense, we remanded for a new restitution hearing. Id.

The Defendant argues that we should vacate the restitution award entirely due to Mr. Spurling's lack of knowledge of the trailer's condition at the time of the offense and impose a restitution amount of $0. The State argues that we should affirm because the lowest estimate of the trailer's worth provided by Mr. Spurling was $4,000, "merely $320 shy of the total restitution payments ordered." However, neither party's assertion for an appropriate remedy is supported by our analysis of the caselaw. In all of the cases cited above, this court remanded for a new hearing to determine the amount of pecuniary loss, even in those cases where the restitution award was much lower than the claimed loss. Given that all of these cases remanded for a new hearing, we decline to part ways from this remedy, though it may be extremely difficult for Mr. Spurling to establish at the time of

- 12 -

the offense his pecuniary loss beyond arbitrary estimates if he had not been to the trailer in three years and is unable to provide any additional information at the new hearing.

Relative to the appropriate remedy, we also feel constrained to note that pursuant to Tennessee Code Annotated section 40-35-304(f), a defendant, victim, or district attorney may petition the trial court at any time, and the trial court may hold a hearing and, if appropriate, waive, adjust, or modify its order regarding restitution. Accordingly, we reverse the restitution order of the trial court and remand for a new restitution hearing.

Were we not reversing the restitution award, we would agree with the parties that the judgment form reflects an improper amount of restitution, $7,000. While this amount was found to be the total pecuniary loss to Mr. Spurling, it was not the amount of the restitution award after considering the Defendant's ability to pay, $4,320.[4] Moreover, the payment of this amount would extend beyond the expiration of the Defendant's probationary sentence.

## CONCLUSION

Upon review, we reverse the trial court's restitution award. We remand the case for a new restitution hearing and reconsideration as to Mr. Spurling's pecuniary loss regarding the trailer at the time of the offense and any additional information regarding the Defendant's financial resources and future ability to pay.

_____
D. KELLY THOMAS, JR., JUDGE

---

[4] The record supports the conclusion that the trial court weighed and considered the Defendant's ability to pay the ordered restitution. Although the Defendant in his brief takes umbrage with this determination, he does not raise the trial court's decision in this regard as an issue on appeal. However, if necessary, this issue may also be revisited upon remand.

- 13 -